MACKIN *v.* DETROIT-TIMKIN AXLE CO.

1. MASTER AND SERVANT—CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT—VALIDITY—PERSONAL INJURIES.

The principle involved in the statute providing for compensation to injured workmen is based on the economic principle of trade risk, in that the losses resulting from personal injuries incident to industrial pursuits are treated like wages and breakage of machinery and as part of the cost of production, and the statute affects fundamental changes in the matter of rules governing the adoption of liability for negligence; but it by no means follows that there is any violation of the spirit of the Constitution in the enactment of such statute. Act No. 10, Extra Session 1912 (2 How. Stat. [2d Ed.] § 3939 *et seq.*).

2. SAME.

There is no vested right as to any remedy for a tort to happen in the future, that is protected by the Constitution, and except as to vested rights the legislature has power to change or abolish any existing statutory or common law remedy.

3. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT—ELECTION OF REMEDY—NOTICE—PRESUMPTIONS.

The objection that the statute deprives an injured employee of his right to resort to the courts for redress and to claim a jury trial, without waiver, consent or knowledge on his part, is untenable as a ground to declare the statute unconstitutional. Under the provisions of section 8 of pt. 1, the employee is charged with notice of the action of the employer in electing to become subject to the act whether or not the employee has actual notice, and employees come within its terms unless at the time of hiring notice in writing of an election not to be subject to the provisions of the law is served upon the employer.

4. SAME.

No provision of the Constitution prohibits the legislature from avoiding uncertainty by adopting a rule that the

employee shall be conclusively presumed to have notice of his master's election to become subject to the compensation act, unless he shall serve such notice as is provided by part 3, § 4, of Act No. 10, Extra Session 1912.

5. SAME—ADMINISTRATIVE FUNCTIONS—DEPARTMENT OF GOVERNMENT.

The Industrial Accident Board is a purely administrative agency created to effect the purposes of the law; though some of its powers are quasi judicial (without that final authority to render enforceable judgments, which constitutes judicial power) it is a proper and constitutional body not open to the criticism that executive, administrative, and judicial functions are combined.

6. SAME—JUDGMENT—SANCTION.

Judicial power involves a hearing and determination of a controversy and final disposition thereof by some order or judgment which needs no additional sanction to entitle it to be enforced.

7. SAME—TITLE OF ACT.

Under article 5, § 21, of the · Constitution, requiring that statutes shall embrace but one subject which shall be expressed in the title, it is not required that the title contain details or means of carrying out the object of the legislature; if it fairly indicates the general scope of the law, the title is sufficient, and the workmen's compensation law sufficiently complies with those provisions of the Constitution.

8. SAME—SUFFICIENCY.

Objections that the statute contains provisions for repealing an existing act relative to contracts of attorneys for services, and creates a right of action against a third party and subrogates the employer to the rights of the employee, also requiring the injured employee to obtain compensation from the insurance company, are not sufficient ground for declaring the law invalid.

9. SAME—CLASS LEGISLATION—FARM SERVANTS.

The provisions of the statute that exempt household servants, farm laborers and casual employees do not amount to class legislation or deprive employees of equal protection under the law. Appropriating money for the purpose of effecting the object of the act is not in violation of the State Constitution.

10. SAME—MINORS.

Where plaintiff was not a minor, his objection that the act deprives a parent of his right of action for injury to a child, was not proper ground for determining the statute to be unconstitutional, where the statute does not indicate that the parent's action for loss of services has been affected.

11. SAME—ATTORNEY'S FEES—GARNISHMENT—RIGHT OF CONTRACT.

The statutory clause making attorneys' and physicians' fees subject to the approval of the Industrial Accident Board, and the clause relating to the assignment, attachment or garnishment of sums due to an injured employee, relieving the award from his debts, is not unconstitutional for the alleged reason that he is thereby prevented or limited in his right of contract or in the hiring of an attorney of his own choice. Section 12, Art. 2, Constitution.

12. SAME.

Held, that the general plan, purpose, policy and propriety of this legislation is not ôpen to question or subject to constitutional objectioñs raised by claimant.

Error to Wayne; Hosmer, J. Submitted April 12, 1915. (Docket No. 44.) Decided June 14, 1915.

Case by Thomas Mackin against the Detroit-Timkin Axle Company for personal injuries. Judgment for defendant upon a verdict directed by the court. Plaintiff brings error. Affirmed.

*Dohany & Dohany,* for appellant.

*Fred L. Vandeveer (W. P. Belden* and *Hal H. Smith,* of counsel), for appellee.

*Grant Fellows,* Attorney General, and *L. W. Carr,* Assistant Attorney General, *amici curiæ.*

STEERE, J. This case involves the constitutionality of Act No. 10, Extra Session 1912, known as the workmen's compensation law, entitled:

"An act to promote the welfare of the people of this State, relating to the liability of employers for injuries or death sustained by their employees, providing compensation for the accidental injury to or death of employees and methods for the payment of the same, establishing an industrial accident board, defining its powers, providing for a review of its awards, making an appropriation to carry out the provisions of this act, and restricting the right to compensation or damages in such cases to such as are provided by this act." (2 How. Stat. [2d Ed.] § 3939 *et seq.*).

Plaintiff brought an action *ex delicto* to recover damages from defendant under the common law for personal injuries sustained while in its employ, filing his declaration in a plea of trespass on the case, properly stating a cause of action, to which defendant pleaded the general issue and gave notice, as a special defense, that it would rely upon said Act No. 10, and offer proof to show that it had elected in due form and prescribed manner to come under the provisions of said act, and in every way met its requirements, but that plaintiff had refused to accept the benefits and the indemnity provided for and offered to him under said act.

Upon the trial it was shown without dispute, and stipulated, that plaintiff was in defendant's employ continuously for over two months prior to the 8th of October, 1912, upon which day he was injured by an electric shock received while oiling some shafting, and thrown from the step ladder upon which he was standing, falling on a grinding machine, receiving severe bruises and injuries, as a result of which he was confined to his bed and home for several weeks, where he was attended and treated by a physician employed by defendant; that, owing to defective insulation and equipment in defendant's plant, the countershaft which plaintiff was oiling had become heavily charged with electricity, and had been in that

condition for 8 days and upwards prior to the time of his injury, of which condition he had no previous notice or knowledge.

Over 30 days before said accident defendant had filed a written statement with the Industrial Accident Board electing to be subject to and accepting the provisions of the workmen's compensation law, adopting one of the provided methods specified in said act for payment of compensation to its employees, which election and adoption of method for payment of compensation were approved by the Industrial Accident Board September 26, 1912. Plaintiff gave no notice to defendant in writing that he elected not to become subject to the workmen's compensation law, as provided in paragraph 2, § 8, of part 1 of said act, and remained continuously in the employ of the defendant for more than 30 days after it had filed its election to come under the provisions of the act.

Defendant tendered plaintiff in proper time and manner the full amount due him for his injuries under the workmen's compensation law, which he declined to accept, not because it was insufficient according to the provisions of the act, but on the ground said act was unconstitutional, and he claimed the right to an action for personal injuries and trial by jury under the common law.

It was also stipulated between the parties at the trial that, if said Act No. 10 was found unconstitutional in the particulars claimed by plaintiff's counsel, he was entitled to have a verdict directed in his favor for an agreed amount, but, if said act was found constitutional, plaintiff could not recover, and defendant was entitled to a verdict in its favor. After argument, on motion of counsel for defendant, the trial court sustained the constitutionality of the act as to the question raised, and entered judgment on a directed verdict for defendant.

Though more fully elaborated and subdivided, the propositions urged by plaintiff's counsel against the constitutionality of the act under consideration may be summarized and stated as follows: It conclusively imputes to the employee knowledge of the employer's election to come under the law; it confers upon the Industrial Accident Board judicial powers; it includes provisions not covered by the title, and the title embraces more than one subject; it discriminates against domestic, farm, and casual employees, and is class legislation; it deprives a parent of right of action for injury to his child; and it deprives an injured employee of the right to be represented by an attorney or agent of his choice, in making all attorney fees subject to regulation by the Industrial Accident Board.

It is to be recognized at the outset that workmen's compensation legislation of this class, based on the economic principle of trade risk in that personal injury losses incident to industrial pursuits are, like wages and breakage of machinery, a part of the cost of production, works fundamental changes in the familiar principles underlying and governing the doctrine of liability for negligence as heretofore applied to the relation of master and servant. But it by no means follows that this comparatively recent and radical legislation upon the subject, enacted to meet changed industrial conditions, and afford relief from evils and defects which had developed under the old rules of law in negligence cases for personal injuries of employees, violates the spirit or letter of our Constitution. It can be assumed without misgiving that there is no vested right in any remedy for a tort yet to happen which the Constitution protects. Except as to vested rights, the legislative power exists to change or abolish existing statutory and common-law remedies. Common and statute laws only remain in force until altered or repealed. Constitution,

Schedule, § 1. In *Second Employers' Liability Cases*, 223 U. S. 50 (32 Sup. Ct. 175, 38 L. R. A. [N. S.] 44), sustaining the constitutionality of the Federal employers' liability act, which abolished the defenses of contributory negligence, assumption of risk where injury was due to violation of a safety statute, and the fellow-servant doctrine, the Supreme Court of the United States quoted with approval the rule gleaned by Bradbury from its former decisions, as follows:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

While legislation providing for compensation of workmen for industrial injuries upon the basis of trade risks relating to the industry, to be charged against it as part of the cost, is of comparatively modern origin in countries where the common law of England has been the foundation of prevailing systems of law, in recent years statutes of that import, similar in purpose, and often with many provisions nearly identical, have been enacted in England, Ireland, Scotland, Australia, New Zealand, the British provinces of North America, and about one-half of the United States. These when brought before the courts of their respective jurisdictions have, as a rule, been sustained in their essential features. Comparison indicates that those who prepared the Michigan act made a thorough study of then existing laws and decisions upon the subject, and, conserva-

tively adhering to tested precedent when available, painstakingly developed a comparatively mild and well-balanced law, avoiding uncertainties and extremes which some of the more radical acts enacted elsewhere disclose. As a result the questions raised here are not altogether novel, for we find similar provisions in the workmen's compensation laws of other States have been passed upon in their courts of last resort, in carefully considered and well-reasoned opinions.

In some States the law is made compulsory upon both parties or upon one with choice to the other, giving rise to questions which need not be considered here, since the law in this State, as applied to this case, becomes operative upon neither employer nor employee who does not expressly or impliedly consent; but, if the employer so elects, and the employee does not give written notice to the contrary, he is conclusively presumed to have consented, and comes under the act. Plaintiff contends the act is unconstitutional in that particular, contravening both the Federal and State Constitutions, because it deprives an injured employee of his right to resort to the courts for redress and have trial by jury without knowledge, consent, or waiver on his part, and there can be no waiver of constitutional rights without knowledge of the facts upon which it is based. The act, so far as material to that question, provides (part 1, § 8):

"Any employee as defined in subdivision 2 of the preceding section shall be deemed to have accepted and shall be subject to the provisions of this act and of any act amendatory thereof if, at the time of the accident upon which liability is claimed:

"1. The employer charged with such liability is subject to the provisions of this act, whether the employee has actual notice thereof or not; and

"2. Such employee shall not, at the time of entering into his contract of hire, express or implied, with such employer, have given to his employer notice in

writing that he elects not to be subject to the provisions of this act; or, in the event that such contract of hire was made before such employer became subject to the provisions of this act, such employee shall have given to his employer notice in writing that he elects not to be subject to such provisions, or without giving either of such notices shall have remained in the service of such employer for thirty days after the employer has filed with said board an election to be subject to the terms of this act.   *   *   * "

Part 3, § 4:

"But notwithstanding the failure to give, or the insufficiency of, any such notice, knowledge of all filed statements of election and notices of withdrawal of election, and of the time of the filing of the same, shall conclusively be imputed to all employees."

The record fails to disclose whether plaintiff did or did not have actual notice that defendant elected to become subject to the act, but he did have constructive notice and was presumed to know the law, and to know that it became operative as to him if his employer elected, unless he gave notice to the contrary as provided in the act.

The Massachusetts workmen's act (Stat. 1911, chap. 751, pt. 1, § 5), similar in its general scheme to that of Michigan, contains almost the same language as the latter upon the matter of notice, though it does not expressly provide, as here, that knowledge of the employer's election shall be imputed to the employee. It states:

"An employee   *   *   * shall be held to have waived his right of action at common law to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claimed such right, or if the contract of hire was made before the employer became a subscriber, if the employee shall not have given the said notice within thirty days of notice of such subscription."

In *Young* v. *Duncan,* 218 Mass. 346 (106 N. E. 1), plaintiff brought a common-law action for personal injuries against defendant, who had elected to come under the act and asked dismissal of the case on that ground. Plaintiff offered to show defendant had not given notice of his election and she had no knowledge of the fact. In a well-reasoned opinion reviewing the act and its purpose at length, the court ruled the proposed evidence inadmissible, that reasonable provisions were made for the employee to exercise an election, and, irrespective of actual notice, plaintiff must be held to have accepted the act by failure to give notice that she would not be bound by it, saying in part:

"The section in question affects no existing property rights. It deals with no property right after it has come into being. It affects a situation which antedates any property right arising out of tort. It simply establishes a status between subscribers under the act and their employees in the absence of express action by the latter manifesting a desire to elect a different status. No complaint justly can be made that the section compels the employee to elect without sufficient knowledge. Ignorance of the law commonly is no excuse for conduct or failure to act. The employee is not required to act without inquiry as to the fact of insurance by the employer. He has only to ask for information. That is nothing more than is required in most of the affairs of life in order that one may act intelligently. Knowledge as to interstate commerce rates may be inaccessible without very considerable inquiry, and yet shippers or passengers may be bound by them although ignorant of their terms [citing numerous cases]. * * * The possibility that the employee in a given instance may not know all his rights does not affect the constitutional aspects of the law. Many crimes even are made to depend solely upon the doing of an act with the utmost moral innocence and in ignorance of any forbidding aspect of the act. *Commonwealth* v.

*Mixer*, 207 Mass. 141 [93 N. E. 249, 31 L. R. A. (N. S.) 467, 20 Am. & Eng. Ann. Cas. 1152]."

No constitutional provision is pointed out which prohibits the legislature, in framing this law to best avoid uncertainty and contention tending to litigation, from adopting a rule of conclusive presumption upon the question of notice so long as the employee was left in the first instance free to forestall, overcome, or prevent such presumption by his own act if he so desired. This being true, the constitutional objections raised, which are necessarily founded upon the idea of coercion, disappear because the employee has had a free choice, and, by having failed to give notice, must be held to have elected his remedy under the workmen's compensation law. Such legal presumptions are not unconstitutional nor uncommon. A familiar illustration is the conclusive presumption that a party entitled to jury trial in a civil action has waived his right and elected to go to trial without a jury unless he took some affirmative action and made demand before a certain time or point of progress in the case arrived.

The contention that the Industrial Accident Board and arbitration committees provided for in said act are unconstitutional bodies, because the powers conferred and duties imposed upon them combine executive, administrative, and judicial functions, while the Constitution vests the judicial power in the courts, forbidding any one of the three departments of government exercising the powers belonging to another, is not tenable. This board was created purely as an administrative agency to carry the provisions of the act into effect. The act being elective, it is operative only as to those who choose to come within its provisions, and in that particular it is a board of arbitration by agreement, but, aside from that consideration, it is but an administrative body, vested, it is true, with

various and important duties and powers, some of them quasi judicial in their nature, but without that final authority to decide and render enforceable judgment, which constitutes the judicial power. Its determinations and awards are not enforceable by execution or other process until a binding judgment is entered thereon in a regularly constituted court. Section 13, pt. 3, of said act.

"The judicial power, even when used in its widest and least accurate sense, involves the power to 'hear and determine' the matters to be disposed of; and this can only be done by some order or judgment which needs no additional sanction to entitle it to be enforced. No action which is merely preparatory to an order or judgment to be rendered by some different body can be properly termed judicial." *Underwood* v. *McDuffee,* 15 Mich. 361 (93 Am. Dec. 194).

An examination of the many duties and responsibilities imposed upon the board by the act of a purely administrative nature makes plain that those which may be termed quasi judicial are but incidental, and only exercised when appeal is taken from an arbitration.

In *Reck* v. *Whittlesberger,* 181 Mich. 463 (148 N. W. 247), though constitutional questions were not there involved, this court, in considering the powers and duties of the Industrial Accident Board, held that, as a creature of statute, it is primarily an administrative body created by the act to carry its provisions into effect, having for the efficient administration of the law amongst its many duties and responsibilities quasi judicial powers in certain particulars. The constitutional objection that judicial power is lodged in an administrative board under workmen's compensation acts has been carefully considered and squarely decided against the contention in *State, ex rel. Yaple,* v. *Creamer,* 85 Ohio St. 349 (97 N. E. 602, 39 L. R. A. [N. S.] 694); *Cunningham* v. *Improvement Co.,* 44

Mont. 180 (119 Pac. 554) ; *Borgnis* v. *Falk Co.,* 147
Wis. 327 (133 N. W. 209, 37 L. R. A. [N. S.] 489) ;
*Hawkins* v. *Bleakley* (D. C.), 220 Fed. 378.   But the
development of governmental activities in many fields,
demanding administrative and ministerial agencies
for which commissions and boards have been provided
with extensive and incidentally quasi judicial powers,
has brought the question before this court in numerous
cases where the exercise of such powers has been
sustained, and we think the rulings in those cases are
controlling of this question without further inquiry.
*Hartford, etc., Ins. Co.* v. *Raymond,* 70 Mich. 485 (38
N. W. 474) ; *Feek* v. *Township Board,* 82 Mich. 393
(47 N. W. 37, 10 L. R. A. 69) ; *Bissell* v. *Heath,* 98
Mich. 472 (57 N. W. 585) ; *Attorney General* v. *Jo-
chim,* 99 Mich. 358 (58 N. W. 611, 23 L. R. A. 699,
41 Am. St. Rep. 606) ; *State Tax Com'rs* v. *Board of
Assessors,* 124 Mich. 491 (83 N. W. 209) ; *Northrup*
v. *Maneka,* 126 Mich. 550 (85 N. W. 1128) ; *Kennedy*
v. *State Board of Registration,* 145 Mich. 241 (108
N. W. 730, 9 Am. & Eng. Ann. Cas. 125) ; *Zimmer*
v. *Board of Supervisors,* 159 Mich. 213 (123 N. W.
899) ; *Michigan Central R. Co.* v. *Railroad Com'n,* 160
Mich. 355 (125 N. W. 549) ; and *People* v. *Brazee,*
183 Mich. 259 (149 N. W. 1053), which confirms
certain quasi judicial powers in the commissioner of
labor, and supports its ruling by a review of authori-
ties.

We conclude that the Industrial Accident Board is
a ministerial and administrative body with incidental
quasi judicial powers, exercised by consent of those
electing to be governed by the act, not vested with
powers or duties in violation of constitutional limita-
tions.

We are unable to agree with plaintiff's contention
that the title of this act violates the requirements of
article 5, § 21, of our Constitution, in that it embraces

more than one subject, and includes provisions not expressed in the title. It has been said this section is not to be given a narrow and strained construction (*National Loan, etc., Co.* v. *City of Detroit*, 136 Mich. 451 [99 N. W. 380]), and it is familiar doctrine that this constitutional provision does not require in the title details, incidents, or means of carrying out the object of the legislation, nor an index of the body of the act, but it is enough if it fairly indicates to the inquiring mind the general scope, intent, and purpose of the law. An examination of the title before us and comparison with titles to like statutes in other States discloses that it has been prepared with careful consideration and is unusually comprehensive and broad in its scope. The purpose of the act is broadly declared, and the object sought to be accomplished clearly stated in general terms, from which it must be understood as meaning that the act will contain many germane details and provisions necessary and suitable for the object not set out at length in the title. In *Connecticut Mutual Life Ins. Co.* v. *State Treasurer*, 31 Mich. 6, where the constitutionality of the law was attacked by which the State insurance bureau came into existence, with its many attending powers and activities, under the brief title, "An act to establish an insurance bureau" (Act No. 108, Laws of 1871), this court declared the rule, which has been since followed in passing upon the titles of acts of this class, in part as follows:

"* * * Under such title, and in keeping with, and in furtherance of, the single object expressed, it was competent to go further than to enact mere organic provisions. It was certainly admissible to include any just and pertinent regulations respecting the course of action to be observed by the bureau as a State agency towards those engaged in the business of insurance; and it was equally admissible to include any just and appropriate provisions for pre-

scribing the duty due to the State in the matter of taxation from insurance companies. The fundamental principle of the law was the marking out the reciprocal rights and duties of the State and those carrying on insurance, and to provide the machinery for administration, in so far as the State by a political agency might properly supervise."

The particulars pointed out in which it is claimed the act contains provisions not referred to or comprehended in the title are that it repeals an existing statute relative to contracts with attorneys for services, creates a right of action against a third party by the employer of the injured, subrogating the employer to the rights of the employee, and requires the injured employee to seek compensation from an insurance company, instead of his employer. The last objection, we think, is disposed of in *Barnard* v. *McLeod,* 114 Mich. 73 (72 N. W. 24), where section 16 of the mechanic's lien law (Pub. Acts 1891, p. 230), providing for subrogation under certain circumstances, was sustained, although the title of the act did not in terms give notice of such a provision, and the constitutionality of the act was assailed on the ground of defective title, and the court said:

"We think there is no merit in the constitutional question raised."

If there be any repeal of the statute with reference to attorney's contracts, it is by implication only. The portion of the act questioned provides:

"The fees and the payment thereof of all attorneys and physicians for services under this act shall be subject to the approval of the Industrial Accident Board."

This is but a detail of method for ascertaining and insuring in the first instance full payment to the injured, is germane to the act, and its repealing effect by implication is a matter of construction. An examination of sections 6 and 14, pt. 3, of the act clearly

indicates that the employee is not relegated to seek compensation for his injuries to an insurance company, but liability under the act is clearly upon the employer, and the provisions for insurance are in security and aid of payment by him.

Details in many respects similar to these, and numerous others not specifically enumerated in the titles, are to be found in the Wisconsin, Massachusetts, Minnesota, Ohio, Illinois, New Jersey, California, and Montana employers' compensation acts, the general constitutionality of which has been sustained; and, while it does not appear that these exact objections were raised and passed upon, those acts and the opinions sustaining them are significant and persuasive of the natural and necessary scope of this class of legislation in order to accomplish the object sought, as declared in a general title. We think the objections urged to the title of this act are not tenable under the decisions of this and other courts.

Stress is laid upon that feature of the law which exempts household servants, farm laborers, and casual employees from its provisions, as being class legislation depriving them of equal protection under the law, and in that connection appropriating public money for the benefit of a certain class. In support of this contention counsel cite *Michigan Corn, etc., Ass'n* v. *Auditor General,* 150 Mich. 69 (113 N. W. 582), in which it is held that appropriating funds for the use of a voluntary, unincorporated society, the membership of which is limited to residents of the State actively interested in the improvement of corn, is an attempt to devote public funds to a private purpose in violation of the Constitution. On the same principle it was held a bounty on the manufacture of beet sugar could not be given by the State (*Michigan Sugar Co.* v. *Auditor General,* 124 Mich. 674, 677 [83 N. W. 625, 56 L. R. A. 329, 83 Am. St. Rep. 354]), and townships could not

raise money by taxation to aid a private corporation to build a railroad (*People, ex rel. Detroit, etc., R. Co.* v. *Township Board of Salem,* 20 Mich. 452 [4 Am. Rep. 400]). The fatal objection to the laws under consideration in those cases was that they attempted to authorize a public tax for a mere private purpose, and whatever may have been said in those cases as to discrimination between different classes of occupations was directed to that proposition. Under this law there is no attempt to appropriate public money for private purposes. The expenditure of public funds to defray the expense of administering this law rests upon considerations of public policy, just as the State provides for protection of those engaged in hazardous employment, and supports a labor department for the general good, but primarily concerned with the condition of industrial workers. There can be no question that the legislature may determine that an act of this nature concerning a portion of the body politic is necessary or conducive to promotion of the general welfare of the people of the State and make constitutional appropriation of public funds raised by taxation to carry the law into effect. The law is unquestionable that it is within the power of the legislature to classify both employers and employees, if the classification is not fanciful or arbitrary and for reasons of public policy, is based upon substantial distinctions, is germane to the object sought to be accomplished by the act, not limited to existing conditions only, and applies impartially and equally to each member of the class. This power of the legislature is fully recognized in *Withey* v. *Bloem,* 163 Mich. 419 (128 N. W. 913, 35 L. R. A. [N. S.] 628) ; and *Sonsmith* v. *Railroad Co.,* 173 Mich. 57, 73 (138 N. W. 347). Classifications of this nature, some of them identical with that under consideration, have been sustained in various States where workmen's compensation acts and other laws affecting industrial

workers were under consideration. *Missouri, etc., R. Co.* v. *Mackey,* 127 U. S. 205 (8 Sup. Ct. 1161); *Deibeikis* v. *Link-Belt Co.,* 261 Ill. 454 (104 N. E. 211, Am. & Eng. Ann. Cas. 1915A, 241); *Cunningham* v. *Improvement Co., supra; Borgnis* v. *Falk Co., supra; Dirken* v. *Paper Co.,* 110 Me. 374 (86 Atl. 320, Am. & Eng. Ann. Cas. 1914D, 396); *Opinion of Justices,* 209 Mass. 607 (96 N. E. 308); *Jeffrey Manfg. Co.* v. *Blagg,* 235 U. S. 571 (35 Sup. Ct. 167). In *Mathison* v. *Railway Co.,* 126 Minn. 286 (148 N. W. 71), in which the constitutionality of the workmen's compensation act of that State is sustained, it is said:

"Other courts have held, and we think for sufficient reasons, that the exclusion of domestic servants, farm laborers, and persons whose employment is casual only, from the operation of laws providing compensation for injured workmen is within the proper discretion of the legislature. * * * We also think that the legislature is well within its prerogative when it places in one class employers who become subject to the provisions of part 2 of the act, and in another class employers who do not become subject to such provisions; also when it places in one class employees who become subject to such provisions, and in another class employees who do not become subject thereto. Employers who become subject to part 2 thereby tender to their employees, as a consideration for exemption from common-law liabilities, rights and privileges which did not previously exist, and offer to assume the burden of duties and obligations which were not previously imposed upon them."

We think the latter case covers adversely plaintiff's contention that class legislation results from dividing employees into three classes with varying rights and liabilities. After discussion of the suggested classes the court said:

"These propositions become binding contracts in respect to all who accept them, and remain as continuing offers to those who have not accepted them."

The claim that the act deprives a parent of right of action for injury to his minor child is not tenable, even if open to plaintiff in this case. He is not a minor. His parents are not complaining. The act provides for the damages of the minor. It does not indicate that the parent's action for loss of services is affected. But whether this act "may or may not deprive parties to supposititious cases of constitutional rights has no bearing upon the present case, if it appears that the parties before the court are not deprived of constitutional rights by the proceeding under review." *Sexton* v. *Telegraph Co.*, 84 N. J. Law, 85 (86 Atl. 451).

It is urged that the clause of the act making attorneys' and physicians' fees in accident claims adjusted under its provisions subject to the approval of the Industrial Accident Board, and providing that no payment under this act shall be assignable or subject to attachment or garnishment, or be held in any way for any debts, is unconstitutional as limiting the right of contract, preventing the injured party from employing an attorney of his choosing. In support of this contention, section 12, art. 2, of the Constitution is cited, which is as follows:

"Any suitor in any court in this State shall have the right to prosecute or defend his suit, either in his own proper person or by an attorney or agent of his choice."

The Industrial Accident Board is not, in contemplation of law, a court, and a claimant before it for damages resulting from personal injuries is not strictly a "suitor in any court," but the right of a claimant to select and employ an attorney or agent to represent him in the matter is recognized by the provision referred to. These restrictions in the act, as applied to those who submit to its provisions by election, certainly cannot be held unconstitutional. They were

deemed by the legislature proper and necessary to safeguard the interests of the class for whose benefit largely this act to "promote the welfare of the people of the State" was passed; they are germane to the purpose of the act, and in the light of conditions previously existing in litigation over personal injuries to workmen, of which courts of last resort have taken judicial notice in construing workmen's compensation acts, are beneficial and appropriate, if not essential, to an efficient administration of the law.

We do not deem it necessary to review in detail the underlying reasons which are recognized as fully justifying and sustaining these special provisions, but those interested in that particular will find them graphically elaborated by Judge McPherson in *Hawkins* v. *Bleakley, supra,* and discussed in detail in *Cunningham* v. *Improvement Co., supra,* and also pertinent reflections by Justice Sterling in *Ayers* v. *Buckeridge* [1902], 48 K. B. 57.

The policy, importance, and propriety of this legislation, in its general plan and purpose, are not open to question, and we do not find it subject to the constitutional objections urged in this record. No attack is made here upon that portion of the act relating to municipalities, and therefore no question which might arise in that connection is considered or decided.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.