SHAVERS v ATTORNEY GENERAL

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—STANDING TO SUE—TAXPAYER'S SUITS—EX-
   PENDITURE OF STATE FUNDS—COURT RULES.

   A court rule which allows taxpayers aggrieved by an outlay of
   state funds to bring an action to prevent the illegal expenditure
   of state funds or to test the constitutionality of a statute
   relating thereto does not permit a group to challenge any
   legislation merely because of an incidental expenditure of state
   funds (GCR 1963, 201.2[3]).

2. JUDGMENT—DECLARATORY JUDGMENT—ACTUAL CONTROVERSY—
   COURT RULES—AUTOMOBILES—TORT LIABILITY—NO-FAULT—
   STATUTES.

   A case of actual controversy must be presented before a court
   may issue a declaratory judgment, and a party seeking a
   declaratory judgment must show that the issues he raises have
   more than hypothetical importance to him; therefore, it was
   improper for a trial court to render a judgment as to portions
   of a statute with regard to which the plaintiffs made no
   showing that they were or were likely to be disadvantaged,
   while construing the validity of the so-called "no-fault act",
   which abolishes certain causes of action for tort liability arising

REFERENCES FOR POINTS IN HEADNOTES

[1] 74 Am Jur 2d, Taxpayers' Actions § 16.
[2, 3] 22 Am Jur 2d, Declaratory Judgments §§ 10, 11, 97.
   Am Jur 2d New Topic Service, No-Fault Insurance §§ 12, 13.
   Validity and construction of "No-Fault" automobile insurance
   plans. 43 ALR3d 229.
   Burden of proof in actions under general declaratory judgment acts.
   23 ALR2d 1243.
[4, 5, 7] 73 Am Jur 2d, Statutes §§ 181, 184, 185, 225.
[5] Am Jur 2d New Topic Service, No-Fault Insurance § 17.
[6, 7] 7 Am Jur 2d, Automobile Insurance § 127.
   43 Am Jur 2d, Insurance §§ 239, 241, 279.
[7, 8] 7 Am Jur 2d, Automobile Insurance §§ 4–10.
   Am Jur 2d New Topic Service, No-Fault Insurance §§ 14, 15, 34.
[8] 73 Am Jur 2d, Statutes § 342 *et seq.*

from automobile collisions (MCLA 500.3101 *et seq.;* GCR 1963, 521.1).

3. Automobiles—Statutes—Constitutional Law—Right to Travel.

The recognition that the automobile is a basic means of transportation today does not compel the Court of Appeals to conclude that legislation affecting automobile ownership and use constitutes an infringement upon the constitutional right to travel.

4. Legislature—Legislative Prerogatives—Common Law—Remedies.

The replacement of common law remedies by other means of redress is within the prerogative of the Legislature.

5. Automobiles—Insurance—Statutes—Motor Vehicles—Motorcycles—No-Fault Insurance—Legislative Considerations.

The decision of the Legislature not to require no-fault insurance coverage for motorcycles because of the cost of insurance for those vehicles when enacting compulsory no-fault insurance coverage on motor vehicles was not irrational; the Legislature has wide latitude in reform legislation and may consider many variables, including economic aspects, when fashioning a solution (MCLA 500.3101[2]).

6. Automobiles—Insurance—No-Fault Insurance—Statutes—Property Damage—Moving Vehicles—Constitutional Law—Equal Protection—Reasonableness.

A provision of the no-fault motor vehicle insurance statute which provides that mandatory property protection insurance applies to damage to non-vehicular property and to vehicles which are properly parked at the time of the accident, but not to vehicles which are moving at the time of the accident, is an unreasonable distinction in view of the statute's purpose of attempting to assure prompt and adequate compensation for economic losses caused by automobile accidents, and is therefore violative of equal protection.

7. Automobiles—Insurance—No-Fault Insurance—Property Damage—Moving Vehicles—Statutes—Legislative Purpose—Constitutional Law.

Abolishment of an existing common law scheme in favor of a statutory scheme which does not achieve the legislative purpose is arbitrary and unreasonable; therefore, statutory provisions which abolish the tort system with regard to property damage caused by automobile accidents and do not provide for compensation for damages to a moving vehicle unless the owner has

purchased self-insurance are not valid, because such a scheme does not bear a reasonable relationship to the legislative purpose of providing timely and adequate relief for economic losses arising out of motor vehicle accidents (MCLA 500.3121, 500.3123, 500.3125, 500.3127).

CONCURRENCE BY T. M. BURNS, J.

8. STATUTES—CONSTITUTIONAL LAW—EFFECT OF LEGISLATION—AUTOMOBILES—NO-FAULT INSURANCE.

*The effect of particular legislation is as important a consideration in judging the legislation's validity as what it is purported to do; a finding of unconstitutionality of legislation requiring no-fault insurance coverage for motor vehicles and abolishing much of the tort liability for damages arising out of automobile accidents is not justified on the basis of the practical operation and effect of the legislation as shown in the record before the court.*

Appeal from Wayne, Horace W. Gilmore, J. Submitted June 20, 1975, at Detroit. (Docket Nos. 21238–39, 22918.) Decided November 5, 1975. Leave to appeal applied for.

Complaint by Catherine Shavers and others against the Attorney General, the Secretary of State, the Commissioner of Insurance, and several insurance companies, for a judgment declaring no-fault motor vehicle insurance legislation unconstitutional. Several of the defendants filed cross-complaints challenging certain provisions of the legislation. Declaratory judgment granted. The state officials and various insurance companies appeal. Plaintiffs and other insurance companies cross-appeal. Affirmed in part, reversed in part, vacated in part.

*Lopatin, Miller, Bindes & Freedman,* and *Philo, Maki, Cockrel, Robb, Spearman & Cooper,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski*, Solicitor General, and *Harry G. Iwasko, Jr.*, Assistant Attorney General, for defendants Attorney General, Secretary of State, and Commissioner of Insurance.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Theodore Souris, Carson C. Grunewald*, and *James R. Bushmann*), for defendant State Farm Mutual Automobile Insurance Company.

*Dickinson, Wright, McKean & Cudlip* (by *W. Gerald Warren, Dawn L. Phillips, Richard J. Meyers*, and *Robert L. Schwartz*), for defendant Allstate Insurance Company.

*Downs & Edwards*, for defendant League General Insurance Company.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *James D. Tracy, Michael J. McGuigan* and *Nancy C. Kurtz*), for defendants Detroit Automobile Inter-Insurance Exchange and Riverside Insurance Company.

*Honigman, Miller, Schwartz & Cohn* (by *Avern Cohn* and *Stanley Siegel*), for defendants Aetna Casualty & Surety Company, Home Indemnity Company, Hartford Accident & Indemnity Company, Travelers Indemnity Company and Continental Casualty Company.

Amici Curiae:

American Mutual Insurance Alliance, by *Foster, Lindemer, Swift & Collins, P. C. (Lawrence B. Lindemer* and *David W. McKeague)*.

Central National Insurance Company, Universal Underwriters, Midwest Mutual Insurance Com-

pany, Balboa Insurance Company, Northland Insurance Company, Reserve Insurance Company, Progressive Casualty Company, and National Indemnity Insurance Company, by *Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen (D. J. Watters* and *Charles A. Huckabay).*

Michigan Mutual Liability Company, by *Elijah G. Poxson, Jr.* and *James L. Schueler.*

KMW, Inc., by *Warner, Norcross & Judd (Wallson G. Knack* and *Peter L. Gustafson).*

Before: LESINSKI, C. J., and T. M. BURNS and QUINN, JJ.

LESINSKI, C. J. Plaintiffs, to test the constitutionality of 1972 PA 294; MCLA 500.3101, *et seq.;* MSA 24.13101, *et seq.,* ("No Fault") brought an action for a declaratory judgment in Wayne County Circuit Court. Defendants are three state officials and various insurance companies, some of whom filed cross-complaints challenging certain provisions of the no fault act. After complicated pretrial proceedings and a lengthy trial, the court issued its judgment. The holdings of the trial court in the declaratory judgment that was entered below are as follows:

"NOW, THEREFORE, IT HEREBY IS ORDERED, ADJUDGED AND DECLARED that the following are the rights and legal relationships of the interested parties herein:

"A. Insofar as raised by the issues delineated in the Court's Pretrial Statement and by those permitted to be raised during the course of trial, The Act, including Section 3109a thereof, does not violate any provision of the United States and Michigan Constitutions except as hereinafter specifically declared.

"B. Section 3101(2) of The Act, to the extent that it excludes from The Act vehicles which have two wheels or less violates the Equal Protection Clauses of the United States and Michigan Constitutions and, therefore, is declared to be void and of no force and effect.

"C. That portion of Section 3107(b) of The Act, insofar as it requires that the cost of replacement services be incurred and subsequently be reimbursed, is void and of no force and effect as violative of the Equal Protection Clauses of the United States and Michigan Constitutions. The cost of such replacement services must be paid, therefore, in the same manner as other personal protection insurance benefits are paid.

"D. The last sentence of Section 3109(3) of The Act, empowering the Commissioner of Insurance to approve deductible provisions in excess of $300.00 per accident for inclusion in insurance policies issued under The Act, violates Article III, Section 2 of the Michigan Constitution of 1963 as a delegation of legislative power without any standards whatever and, therefore, such sentence is void and of no force or effect.

"E. Section 3109(1) of The Act violates the Equal Protection Clauses of the United States and Michigan Constitutions and, therefore, is void and of no force and effect.

"F. Notwithstanding the provisions of Section 3135 of The Act, non-resident owners and occupants of a motor vehicle not registered in this State retain all tort rights of action possessed by them under Michigan law without regard to The Act unless such motor vehicle has been operated in this State for an aggregate of more than 30 days in any calendar year or unless such owners or occupants are entitled to personal injury protection benefits provided by an insurance policy or other security providing such benefits under The Act.

"G. Property protection insurance required by The Act violates the Due Process and Equal Protection Clauses of the United States and Michigan Constitutions and, therefore, Sections 3121, 3123, 3125 and 3127 are void and of no force and effect in their entirety and, in addition, all other references to property protection insurance contained in Sections 3101(1), 3145(2), 3148(1)

and (2) and 3163(1) and (3), hereby are declared to be legally ineffectual. Such property protection insurance, therefore, shall not be deemed to be security required by Sections 3101(3) and (4) or 3135(2) of The Act and, consequently, tort liability for property damage is not abolished by Section 3135(2) of The Act. As a further consequence, the residual liability insurance coverage required by Section 3131 of The Act includes property damage liability.

"H. Section 3116 of The Act is construed to require subtraction from personal protection insurance benefits paid or payable under The Act only when like benefits have been recovered upon tort claims.

"I. Cross-Plaintiff State Farm's proposed interpretation of Section 3135, first submitted in its Motion for Partial Summary Judgment, and thereafter included as an issue for determination at the conclusion of this case, be and the same hereby is rejected and its Motion is denied.

"IT IS ORDERED, ADJUDGED AND DECLARED, further, that the provisions of The Act declared to be unconstitutional in the foregoing paragraphs are severable; that all such provisions are declared to be unconstitutional as of October 1, 1973 (the effective date of The Act); and that the balance of The Act is consonant with the original legislative intent."

Plaintiffs filed a motion for a new trial and for a partial rehearing. This motion was denied. The state officials and some of the insurance companies appealed. Plaintiffs and other insurance companies cross-appealed.

Defendants argued before the trial court that plaintiffs' action raised certain issues that were not properly before the court and that a ruling on these issues would be an advisory opinion.

The trial court viewed the question as one of standing. It found that the no fault act "has required and continues to require the expenditure of state funds", and therefore concluded that GCR

1963, 201.2(3) authorized plaintiffs to raise all possible infirmities in the Act. GCR 1963, 201.2(3) deals with real parties in interest[1] and states:

"[A]n action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto may be brought in the name of a domestic non-profit corporation organized for civic, protective, or improvement purposes, or in the names of at least 5 residents of this state who own property assessed for direct taxation by the county wherein they reside."

We disagree with the trial court's ruling that the court rule provides a basis for plaintiffs' suit. Plaintiffs are not concerned with the illegal expenditure of state funds. The court rule allows taxpayers aggrieved by the outlay of state funds to hurdle the traditional standing obstacle in taxpayers suits. We do not read it as permitting a group to challenge any legislation merely because of an incidental expenditure of state funds; almost all legislation involves some public spending. GCR 1963, 201.2(3) is inapplicable to this litigation.

We must determine whether GCR 1963, 521, Declaratory Judgments, authorized plaintiffs' action. Even though the court rule was intended to provide "the broadest type of declaratory judgment procedure", GCR 1963, 521, Official Committee Comment, the first subsection of the rule requires that there be "a case of actual controversy" before a court may issue a declaratory judgment. GCR 1963, 521.1, *Kuhn v East Detroit,* 50 Mich App 502; 213 NW2d 599 (1973), *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343; 184 NW2d 247 (1970). A person seeking a declaratory judgment must show that the issues he raises

---

[1] MCLA 600.2041(3); MSA 27A.2041(3) is identical.

have more than hypothetical importance to him. "It is familiar law that a party to whom a statute is inapplicable cannot question its constitutionality by seeking a declaration of rights." 1 Anderson, *Declaratory Judgments,* § 159, p 303. Plaintiffs have made no showing that the provisions of the no fault act dealt with in paragraphs C, D, E, F, and H of the court's judgment have or are likely to work to their disadvantage. A decision on the issues decided in those paragraphs was not "necessary to guide plaintiffs' future conduct in order to preserve [their] legal rights". *Welfare Employees Union v Civil Service Comm, supra,* 28 Mich App at 350. It was, therefore, inappropriate for the trial court to include paragraphs C, D, E, F, and H in its judgment. "It is not properly within our function to hypothesize particularized claims or to set up, speculatively, strawmen classes of persons who might claim to be disadvantaged in various ways by the classifications and provisions of the act." *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 484; 208 NW2d 469 (1973), (concurring opinion of Justice LEVIN).

We do think, however, that because of the possibility of punishment by fine or imprisonment for non-compliance with the no fault act's security requirements, plaintiffs' action for a declaratory judgment on the issues found in paragraphs A and G of the court's judgment was appropriate. *Strager v Wayne Prosecuting Attorney,* 10 Mich App 166; 159 NW2d 175 (1968).

Plaintiffs also challenged the Legislature's decision not to include motorcycles in the no fault act's compulsory insurance requirements. Paragraph B of the judgment contains the trial court's ruling on this challenge. It was proper for the trial court to consider plaintiffs' claim that the act's

compulsory insurance requirements, since they did not extend to all types of motor vehicles, were invalid on equal protection grounds. Arguments going to the act's failure to extend no fault benefits to motorcyclists or someone injured by a motorcycle, however, should not have been heard. This sort of underinclusiveness claim, to be adequately considered, deserves the presentation only a member of the excluded class could make. Our review of Paragraph B will be limited to the argument properly before the trial court.

Paragraph I resolved a question of construction that was directly related to the issues in Paragraphs A and G, and the trial court appropriately ruled on this question.

Turning to the substance of plaintiffs' challenge, we must first decide whether the trial court utilized the correct standard of constitutional review. Plaintiffs claim that the trial court's application of traditional tests of due process and equal protection was error, and that the court should have subjected the act to "strict scrutiny" since the fundamental right to travel was involved. We find no infringement of plaintiffs' fundamental rights, and therefore agree with the trial court's refusal to employ a strict scrutiny test. Our recognizing that the automobile is a basic means of transportation today does not force us to conclude that legislation affecting automobile ownership and use constitutes an infringement upon the constitutional right to travel. Recent right to travel cases, which have dealt with statutes or regulations that penalized interstate migration, *e.g., Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969), *Dunn v Blumstein,* 405 US 330; 92 S Ct 995; 31 L Ed 2d 274 (1972), provide no basis to doubt that "[t]he use of the automobile as an

instrument of transportation is peculiarly the subject of regulation". *Silver v Silver,* 280 US 117, 122; 50 S Ct 57, 58; 74 L Ed 221, 225 (1929). We are unwilling to extend the right to travel to include mere locomotion and thus severely limit legislative ability to respond to the many hazards present-day automobile operation presents. Rather than "strict scrutiny", the more permissive traditional tests of due process and equal protection should apply to this legislation.

I. Personal Protection Insurance

The no fault act requires that all motor vehicles registered in Michigan carry personal protection insurance. Benefits, payable to an insured without regard to fault, cover medical expenses, wage losses and cost of replacement services that result from an automobile accident. Medical expenses include prosthetic devices and rehabilitation costs, wage reimbursement is limited to $1,000 a month for three years, and replacement services have a limit of $20 a day for three years. If death results, survivors may recover, in addition to $1,000 funeral and burial expenses, the amounts the deceased would have contributed to them, subject to a three-year $1,000 a month limit.

In providing for this rather extensive coverage, the no fault act abolishes most common law tort liability for automobile related personal injuries. Only if there is death, serious impairment of body function or permanent serious disfigurement can there be a recovery for non-economic losses resulting from the ownership, maintenance or use of an automobile. Economic loss that is in excess of the benefits recoverable under personal protection insurance may also be recoverable in a tort suit.

Tort liability for intentionally caused harm remains.

The no fault act's provisions on compensation for accident victims serves the important social interest of lessening the tragic social and economic consequences that often accompany automobile mishaps. The route taken by the Legislature to achieve this permissible end, the institution of compulsory "no fault" insurance and the partial abolition of tort remedies, is not an unreasonable one. The trial court found that problems for both society and injured individuals existed with reparations for personal injuries under the tort system.

Common law remedies are not sacrosanct, *New York Central R Co v White,* 243 US 188; 37 S Ct 247; 61 L Ed 667 (1917), *Mackin v Detroit-Timkin Axle Co,* 187 Mich 8; 153 NW 49 (1915), Const 1963, Art 3, § 7, and their replacement by other means of redress is within the Legislature's prerogative. Plaintiffs have not shown that the no fault act's provisions for replacing tort liability for personal injury with recovery under compulsory first-party insurance violates due process.

Plaintiffs also argue vigorously that equal protection prohibits the difference in treatment the no fault act accords automobile accident victims and automobile tortfeasors. We disagree and find no invidious discrimination in the distinction made between automobile accidents and other instances of injury. There is certainly evidence that automobile accidents, by their frequency and severity, present a social evil unique at least by degree. "Courts should proceed cautiously and should defer to legislative judgments which are reasonable. The Legislature must be free to experiment without being required to attain 'mathematical nicety' in its formulation of remedies to social and

economic problems." *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 680; 232 NW2d 636 (1975).

The trial court did find that the no fault act, in excluding motorcycles,[2] violated equal protection. Finding that motorcycles have consistently been classified as motor vehicles in this state and that their exclusion from the act did not have a reasonable relationship to the act's purpose, the trial court ruled that their exclusion lacked constitutional justification. The court accepted that cost was the main reason for not including motorcycles, but was unpersuaded that cost of coverage could justify the alleged under-inclusiveness of the act. We disagree. In reform legislation, the Legislature has wide latitude and may consider many variables in fashioning a solution. *Manistee Bank & Trust Co v McGowan, supra.* In the recent case of *Geduldig v Aiello,* 417 US 484; 94 S Ct 2485; 41 L Ed 2d 256 (1974), the United States Supreme Court reviewed the exclusion of pregnancy-related disabilities in California's disability insurance coverage. The cost to contributing employees was given significant weight by the Court in upholding the Legislature's decision. In *Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510; 104 NW2d 182 (1960), the Michigan Supreme Court upheld limitations on workman's compensation benefits allowable for death resulting from silicosis. "The legislative scheme as exemplified in the silicosis amendments included both monthly gradations and overall maximum limitations on benefits designed to lessen the *economic impact* on industry of accumulated exposure." 360 Mich at 523 (Emphasis added).

---

[2] " 'Motor vehicle' as used in this chapter means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels." MCLA 500.3101(2); MSA 24.13101(2).

We refuse to consider irrational the Legislature's decision not to require no fault coverage for motorcycles because of the cost of insurance for those vehicles. In our delicate task of constitutional review we should not deprive the Legislature of its ability to consider the economic aspects when deciding how far to extend its reform. *Danridge v Williams*, 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970).

II. Property Protection Insurance

The no fault act requires that automobile owners purchase property protection insurance. Like personal protection insurance, the required property insurance pays benefits without regard to fault. Property protection insurance, however, provides strictly third-party coverage. Even that coverage does not apply to vehicles and their contents unless the vehicle is properly parked at the time of the accident. The required property insurance provides coverage, up to $1,000,000, for damage to non-vehicular property of third parties and properly parked vehicles of third parties. All that remains of tort liability for property damage arising from the ownership, maintenance or use of an automobile is liability for intentionally caused harm.

Plaintiffs and cross-plaintiffs State Farm and Allstate attacked the property damage provisions on due process and equal protection grounds. The trial court found that the tort system did not present the same severe social problems, namely, inefficient and inequitable compensation, for property damage, that it did for personal injuries. In fact, the court, finding no evil to be eliminated by altering the scheme for property damage reparations, stated that "the challenged sections ad-

dressed no legitimate governmental interests".
This led the court to conclude that the act's property damage provisions were invalid. Our analysis, though it has a different emphasis, leads us to the same conclusion.

Even under the minimum scrutiny test applied when innovative legislation is challenged on equal protection grounds, the legislation must be examined to see if its classifications are reasonable, and bear some reasonable relationship to the object of the legislation. While it is not the judiciary's task to second-guess legislative wisdom or to speculate on the possibility of more precise line-drawing by the Legislature, the decision on reasonableness cannot be avoided. "What is reasonable is in each instance a matter of judgment. In the final analysis, it is a value judgment and should be recognized as such." *Manistee Bank & Trust Co v McGowan, supra,* at 671.

Our judgment is that the distinction between moving vehicles and other types of property found in the no fault act's property damage provisions is an unreasonable one. The act is an attempt to assure prompt and adequate compensation for economic losses due to automobile accidents. To achieve this purpose, recovery for losses due to personal injury is had without regard to the negligence or "fault" of the injured party. Persons suffering certain types of property losses are reimbursed, under the act, without inquiry as to whether negligence caused their loss. Yet the act provides no means for compensating the owner of a vehicle damaged while it was being operated.

One reason advanced for the disparate treatment of certain property losses is that in accidents involving these two types of property, the moving vehicle is most often at fault; non-vehicular prop-

erty seldom causes damage to vehicles. But we fail to see how this observation serves as a basis of distinction when the aims of the act are considered. *Reich v State Highway Dept,* 386 Mich 617; 194 NW2d 700 (1972). It is also argued that the act, by excluding moving vehicles from the property protection coverage, places the burden of protecting the vehicle on the owner, who may still purchase optional collision insurance, and this provides a reasonable basis to set apart moving vehicles. But, we ask, why limit this burden to only vehicle owners, or why place the burden of protecting a parked car on someone other than its owner? If the answer is that non-vehicular property or parked cars seldom are at fault, we are again at an impasse.

Good reason can be offered, in light of the act's objective, for treating personal injury losses differently than property losses. The tort system operated at different levels of efficiency and adequacy of compensation for these types of claims. A valid distinction could also be made based upon the different burdens these types of losses placed on society and the individuals involved. But we fail to see any reasonable basis, in view of the act's purposes, that justifies the property damage classifications made by the act. We therefore hold that the property damage provisions are violative of equal protection.

In addressing plaintiffs' due process claims, we again turn to the legislative purpose. The legislative purpose, it appears, is to provide timely and adequate relief, at the lowest cost to the system and the individual, for economic losses arising out of motor vehicle mishaps. This purpose, as we have noted, is a permissible legislative goal. However, the means used to implement this purpose in

the property sections of the act are arbitrary and do not bear a reasonable relation to the legislative object. *Grocers Dairy Co v Dept of Agriculture Director,* 377 Mich 71; 138 NW2d 767 (1966). Under the enactment, adequate and timely compensation for damage to the owner's vehicle will result only if the owner exercises his option to purchase insurance for his own vehicle. This option, by reducing the opportunities for compensation for damage to the owner's vehicle, is an insufficient and arbitrary substitute for the prior tort system, which was found by the trial judge to be both accurate and timely.[3] This is not to say that a substitute means of compensation is mandatory in all legislative alterations of the common law.[4] We hold that to abolish an existing common law scheme in favor of a statutory scheme that does not achieve the legislative purpose is arbitrary and unreasonable.[5] The traditional tort remedy at least provided compensation for vehicle owners who could prove another's negligence, and there was, in

---

[3] The optional collision insurance actually preserves fault analysis for those who wish to pay for it. The insurance available is on two forms: broad coverage and limited coverage. Broad coverage pays for all property damage to the vehicle in an accident in which the insured was *not at fault.* In cases in which the insured was *at fault,* there is a $100 deductible. Limited collision provides for payment of all damages to the car, less a $100 deductible, if the insured was *not at fault* and no payment if the insured was *at fault.* The effect of the statute, then, is to eliminate access to the tort system as a right and to substitute an option to purchase insurance that, in part, preserves traditional notions of fault. This substitution does not seem reasonable to us, for it does not advance the Legislature's purpose.

[4] In the flux of events, the Legislature may determine that society is served by the elimination of legal recognition of a formerly protected interest. In *Bean v McFarland,* 280 Mich 19; 273 NW 332 (1937), the Court summarily upheld the legislative abolition of the tort of criminal conversation.

[5] Since we are certain that the Legislature did not intend to deny legal recognition to the economic interest one has in his automobile, the abolition of a means of protecting this interest must be considered unreasonable. The lack of a substitute scheme for compensation prevents us from making an analogy to workmen's compensation.

addition, the option for self-insurance; under the act only the option for self-insurance remains. The legislative purpose of adequate and timely relief is not served by elimination of the tort system for owners' property claims.

The property protection provisions of the no fault act that we have held invalid are severable. The scheme for personal injury protection, which we uphold, can function independently, and under MCLA 8.5; MSA 2.216, we must find the invalid portion severable, rather than invalidate the entire act.

Paragraphs A, G and I of the Declaratory Judgment are affirmed; Paragraph B, insofar as it deals with a justicable issue, is reversed, and the remaining paragraphs are vacated. We award no costs, a public question being involved.

QUINN, J., concurred.

T. M. BURNS, J. *(concurring).* It is with reluctance that I join with my brothers in support of the opinion authored by Judge LESINSKI and concurred in by Judge QUINN. I cannot fault the fine reasoning of the majority in their resolution of the complex constitutional issues raised in this appeal. More attention, however, can and should be given to what appear to be the practical results of the no-fault system.

When the concept of no-fault insurance was first introduced, there was much enthusiasm about the idea. The thought of uncluttered courts and lower insurance premiums had a strong appeal. The momentum of the no-fault concept has been great, with numerous states having adopted some form of no-fault insurance at the present time, and even proposed Federal legislation designed to give effect to the no-fault theory on a national basis.

The no-fault act has been labelled social reform legislation. It was enacted to rectify the inequities of the traditional means of compensating victims of automobile accidents. The principal evil existing in the former system was that of complicated, lengthy and costly litigation, providing no certainty that the innocent victim of an accident would ever be compensated. To remedy these inequities, no-fault promised to provide a uniform system of compulsory insurance at a reasonable cost. For the good of all of us as potential accident victims, we became, by force of law, policy holders.

Now that we have experienced the realities of this legislation, however, the initial enthusiasm appears to have waned. It has been suggested that not only have lower premiums not developed, but even higher premiums are now the rule. Insurance companies might be the real beneficiaries of this act. Uncertainty about the wisdom of the no-fault act, however, is not a proper legal basis for finding the legislation unconstitutional.

In short, what sounds so grand in theory may well not be so in reality. But as the history of constitutional challenges to the enactment of workmen's compensation statutes demonstrates, it is not enough to say that such legislation is unwise or imperfect. What particular legislation does *in fact* is as important a consideration in judging its validity as what it is *purported* to do. As stated by Justice Pitney:

"The question whether a state law deprives a party of rights secured by the Federal Constitution depends not upon how it is characterized, but upon its practical operation and effect." *Mountain Timber Co v State of Washington,* 243 US 219, 237; 37 S Ct 260; 61 L Ed 685 (1917).

I have noted what I think are some of the practical effects of our present statute. However, on this record, which was made in the relatively early days of the operative effect of the act, I am not able to conclude that the "practical operation and effect" of this legislation justifies a finding by this Court of unconstitutionality. On a more current record, a contrary conclusion may be justified.