O'DONNELL v STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—STATUTES—LEGISLATIVE CLASSIFICATIONS—
PRESUMPTIONS.

Legislative classification should be presumed valid, since the
Legislature has broad discretion in distinguishing between
different classes.

2. CONSTITUTIONAL LAW—STATUTES—LEGISLATIVE CLASSIFICATIONS.

Legislative classification must be reasonable and not arbitrary, it
must be germane to the object of the legislation and uniform in
its operation upon all persons of the class to which it naturally
applies.

3. INSURANCE—AUTOMOBILES—NO FAULT—STATUTES.

The basic purpose of the no-fault act is to insure the compensa-
tion of persons injured in automobile accidents (MCLA 500.3101
*et seq.:* MSA 24.13101 *et seq.).*

4. INSURANCE—AUTOMOBILES—NO FAULT—STATUTES—CONSTITU-
TIONAL LAW.

The section of the no-fault act which reduces no-fault benefits by

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 137, 143.
[2, 18, 23] 16 Am Jur 2d, Constitutional Law §§ 496–501, 551.
[3] Am Jur 2d New Topic Service, No-Fault Insurance § 14.
[4–10, 16, 24, 26, 28] Am Jur 2d New Topic Service, No-Fault Insur-
ance §§ 12, 13.
[11] 73 Am Jur 2d, Summary Judgment §§ 2, 4.
[12] 73 Am Jur 2d, Summary Judgment §§ 20, 36.
[13] 73 Am Jur 2d, Summary Judgment § 26.
[14] 16 Am Jur 2d, Constitutional Law §§ 554, 555, 557, 559.
[15] 16 Am Jur 2d, Constitutional Law §§ 485, 491, 527, 554, 555, 557,
559.
[17] 4 Am Jur 2d, Appeal and Error §§ 13, 14.
  5 Am Jur 2d, Appeal and Error §§ 873, 874.
[19, 20, 25, 27] 16 Am Jur 2d, Constitutional Law §§ 485, 491, 527.
[21] 16 Am Jur 2d, Constitutional Law § 504.
[22] 70 Am Jur 2d, Social Security and Medicare § 4.

any compensation paid under any state or Federal law but not by private insurance benefits is patently unreasonable and discriminatory (MCLA 500.3109[1]; MSA 24.13109[1]).

5. CONSTITUTIONAL LAW—INSURANCE—LEGISLATIVE CLASSIFICATIONS —ARBITRARY CLASSIFICATIONS.

A reduction in the cost of insurance is a proper basis for legislative classification, however, such reduction does not alone justify an essentially arbitrary legislative classification.

6. INSURANCE—CONSTITUTIONAL LAW—POLICY EXCLUSIONS—VALIDITY.

Policy exclusions are invalid and against public policy where they reduce an insured's recovery by amounts paid out of workmen's compensation funds or under disability benefit laws.

7. CONSTITUTIONAL LAW—INSURANCE—AUTOMOBILES—NO FAULT— STATUTES.

A section of the no-fault act is unconstitutional where it allows personal protection benefits plus private insurance benefits to one group, but deducts from personal protection benefits anything received from a government program; there is no legitimate purpose for establishing such a distinction which arbitrarily discriminates against those who receive certain governmental benefits (MCLA 500.3109[1]; MSA 24.13109[1]).

8. INSURANCE—CONSTITUTIONAL LAW—NO FAULT—AUTOMOBILES— STATUTES.

A section of the no-fault act is arbitrary in its application where those who can afford private insurance to supplement no-fault benefits are allowed to receive duplicative recovery while those who cannot afford such are denied duplicative recovery (MCLA 500.3109[1]; MSA 24.13109[1]).

9. INSURANCE—SET-OFF PROVISIONS—PUBLIC POLICY—SUPPORT BY STATUTE.

A set-off provision in an insurance contract is void where it is patently offensive to public policy and is not supported by the sanction of a valid statute covering such provisions.

CONCURRENCE BY V. J. BRENNAN, J.

10. CONSTITUTIONAL LAW—REASONABLENESS—INSURANCE—AUTOMOBILES—NO FAULT—LEGISLATURE—CLASSIFICATIONS—STATUTES.

There is no reasonableness in the legislative classification con-

tained in the no-fault act whereby benefits provided or required to be provided under the laws of any state or the Federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury (MCLA 500.3109[1]; MSA 24.13109[1]).

DISSENT BY BASHARA, P. J.

11. JUDGMENT—SUMMARY JUDGMENT—COURT RULES.

   *A motion for summary judgment brought under the court rule regarding summary judgments merely tests the legal sufficiency of the claim as determined from the pleadings alone (GCR 1963, 117.2[1]).*

12. JUDGMENT—SUMMARY JUDGMENT—ASSUMPTION OF TRUTH.

   *Every well-pled allegation in the complaint is assumed to be true when a motion for summary judgment is considered at the trial or reviewed at an appellate level.*

13. JUDGMENT—SUMMARY JUDGMENT—TEST FOR MOTION.

   *The test for a motion for summary judgment is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery.*

14. CONSTITUTIONAL LAW—STATE ACTIONS.

   *The proscriptions of the Fourteenth Amendment apply to actions of the state and not merely private conduct (US Const, Am XIV).*

15. CONSTITUTIONAL LAW—DUE PROCESS—EQUAL PROTECTION.

   *The Fourteenth Amendment applies to all state legislation which impairs due process or denies equal protection (US Const, Am XIV).*

16. CONSTITUTIONAL LAW—STATE ACTION—INSURANCE—NO-FAULT RECOVERY—STATUTES.

   *It is state action where an insurance contract reduces no-fault recovery by amounts received by the insured from state or Federal government programs, where the reduction is based upon a statute enacted by a state Legislature (MCLA 500.3109[1]; MSA 24.13109[1]).*

17. CONSTITUTIONAL LAW—APPELLATE REVIEW.

   *Appellate courts should not decide constitutional questions not passed upon by the trial court.*

18. CONSTITUTIONAL LAW—LEGISLATIVE CLASSIFICATIONS.

   *A legislative classification must be reasonable, not arbitrary, so that all persons similarly situated are treated alike.*

19. CONSTITUTIONAL LAW—EQUAL PROTECTION.

   *The Equal Protection Clause does not deny a state the power to treat different classes of persons in different ways (US Const, Am XIV).*

20. CONSTITUTIONAL LAW—GROSS DISCRIMINATION.

   *Gross discrimination can sometimes lie in treating things that are different as though they are exactly alike.*

21. CONSTITUTIONAL LAW—EQUAL PROTECTION—IMPERFECT CLASSIFICATIONS—STATUTES.

   *In the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect; if it has some reasonable basis it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality (US Const, Am XIV).*

22. SOCIAL SECURITY AND PUBLIC WELFARE—INSURANCE—PUBLIC POLICY—MINIMUM COMPENSATION.

   *Social security as well as other governmental programs, such as workmen's compensation, are intended to fill a void not adequately covered by private insurance; these governmental programs are part of an overall statutory scheme established as a matter of public policy to provide minimum compensation for all persons otherwise qualifying for benefits under the programs.*

23. CONSTITUTIONAL LAW—STATUTES—RATIONAL BASIS—CLASSIFICATIONS—PRIVATE INSURANCE—GOVERNMENT INSURANCE PROGRAMS.

   *A rational basis exists for distinguishing between persons who receive benefits from private insurance and those who receive benefits from government programs designed to fill a void not adequately covered by private insurance.*

24. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATIONS—INSURANCE—AUTOMOBILES—RATIONAL BASIS—REDUCED COSTS OF GOVERNMENT PROGRAMS.

   *The Legislature can rationally conclude that a reduction of no-fault proceeds to the extent that one receives public benefits would eliminate duplicate recovery and reduce costs.*

25. CONSTITUTIONAL LAW—EQUAL PROTECTION.

   *The Equal Protection Clause does not preclude a state from taking one step at a time and addressing itself to the phase of the problem that seems most acute while neglecting other phases of the problem (US Const, Am XIV).*

26. CONSTITUTIONAL LAW—INSURANCE—AUTOMOBILES—APPEALS— SCOPE OF REVIEW FOR APPEALS COURT.

   *The Court of Appeals under its limited function as a reviewing court need not consider whether the Legislature should have gone further where the Legislature has rationally concluded that a reduction of no-fault proceeds to the extent one receives public benefits would eliminate duplicate recovery and reduce costs.*

27. CONSTITUTIONAL LAW—DISCRIMINATION—CLASSES DISCRIMINATED AGAINST—INABILITY TO PAY.

   *The common characteristics of classes discriminated against by their inability to pay are: (1) because of their lack of money they are completely unable to pay for some desired benefit, and as a consequence, (2) they sustain an absolute deprivation of a meaningful opportunity to enjoy that benefit.*

28. CONSTITUTIONAL LAW—DISCRIMINATION—CLASSES DISCRIMINATED AGAINST—INABILITY TO PAY—INSURANCE—AUTOMOBILES—NO FAULT—PRIVATE INSURANCE.

   *There is no class discriminated against by an inability to pay under the statutory scheme of no-fault insurance since everyone participating is entitled to certain minimum benefits; as long as everyone has an opportunity to enjoy a minimum statutory benefit, there is no absolute deprivation, and the fact that some individuals are unable to purchase private insurance is of no moment.*

Appeal from Washtenaw, Ross W. Campbell, J. Submitted March 9, 1976, at Detroit. (Docket No. 25429.) Decided August 4, 1976. Leave to appeal granted, 397 Mich 848.

Complaint by Heather E. O'Donnell and her children, Kathleen A. O'Donnell, Michael B. O'Donnell, and Timothy H. O'Donnell, against State Farm Mutual Automobile Insurance Company alleging breach of an insurance contract and challenging the constitutionality of a section of the

no-fault act which provides for the deduction of governmental benefits from the personal protection insurance benefits provided by the act. Summary judgment for defendant. Plaintiffs appeal. Reversed and remanded for entry of judgment for plaintiffs.

*Calder & Kirkendall* (by *Robert E. Logeman*), for plaintiffs.

*DeVine & DeVine* (by *Allyn D. Kantor*), for defendant.

Before: BASHARA, P. J., and V. J. BRENNAN and T. M. BURNS, JJ.

T. M. BURNS, J. Plaintiffs are the wife and children of Gary O'Donnell, who was fatally injured in an automobile accident. Mr. O'Donnell was covered by a no-fault automobile insurance policy issued by the defendant, and plaintiffs are dependents of decedent for purposes of survivor's loss benefits.

Decedent's insurance policy provided that the maximum survivor's loss benefits would not exceed $1,000 per 30-day period and that the amount payable by the insurance company would be reduced by amounts paid or payable to the survivors under state or federal law.

Plaintiffs were entitled to the maximum benefits of $1,000 per 30-day period for three years after decedent's death as permitted by the no-fault act, MCLA 500.3108; MSA 24.13108. From the monthly maximum benefits amount, however, defendant deducted $560, the sum plaintiffs received in social security benefits. This deduction was made pursuant to MCLA 500.3109(1); MSA 24.13109(1), which provides as follows:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

Plaintiffs thus received $440 per month instead of the $1,000 per month figure set out in the insurance policy.

Plaintiffs filed a complaint in circuit court alleging the defendant breached the insurance contract by not paying the full $1,000 per month in benefits. Plaintiffs also sought a declaration of rights relative to the constitutionality of § 3109 of the no-fault act, which provides for the deduction of governmental benefits from the personal protection insurance benefits.

Defendant filed a motion for summary judgment, alleging that plaintiffs failed to state a claim upon which relief could be granted in that the reduction of benefits under the policy was in compliance with state law. Defendant also asserted that the policy constituted a contract between private parties and that, since no state action was involved, no claim of constitutional violation could be maintained.

The trial court granted defendant's motion for summary judgment. The order stated that the complaint failed to state a cause of action for the reasons that no breach of any provision of the contract was alleged, and that defendant, in complying with the no-fault act, was not engaged in state action and, therefore, any claim that the contract itself was unconstitutional was not supported as a matter of law.

On appeal, plaintiffs argue that the trial court erred reversibly in granting summary judgment and contend that § 3109 of the no-fault act is unconstitutional.

I

It is argued that MCLA 500.3109(1); MSA 24.13109(1) violates the equal protection guarantees of the U.S. and Michigan Constitutions. This Court has recently enunciated the standard for review of legislation claimed to be so defective. See *Shavers v Attorney General,* 65 Mich App 355; 237 NW2d 325 (1975). *Cf. Manistee Bank & Trust Co v McGowan* 394 Mich 655; 232 NW2d 636 (1975), and *Fox v Employment Security Commission,* 379 Mich 579; 153 NW2d 644 (1967).

Generally, legislative classification should be presumed valid, as the Legislature has broad discretion in distinguishing between different classes. "The Legislature must be free to experiment without being required to attain 'mathematical nicety' in its formulation of remedies to social and economic problems". *Manistee Bank & Trust Co v McGowan, supra,* at 680. But legislative classification must not be arbitrary or unreasonable, it must be germane to the object of the legislation, and it must be made uniform in its operation upon all persons of the class to which it naturally applies. *Fox v Employment Security Commission, supra.*

"Even under the minimum scrutiny test applied when innovative legislation is challenged on equal protection grounds, the legislation must be examined to see if its classifications are reasonable, and bear some reasonable relationship to the object of the legislation. While it is not the judiciary's task to second-guess legislative wisdom or to speculate on the possibility of more precise line-drawing by the Legislature, the decision on reasonableness cannot be avoided." *Shavers v Attorney General, supra* at 369.

In the *Shavers v Attorney General* challenge of

the no-fault act, Judge Gilmore of the Wayne
County Circuit Court found that § 3109(1) violates
the equal protection clauses of the U.S. and Michi-
gan Constitutions. In this Court's decision in *Shav-
ers,* we vacated that ruling because the question
was not properly justiciable. In the instant case,
however, we are squarely faced with a "case of
actual controversy" concerning the validity of
§ 3109(1).

The effect of § 3109(1) is to reduce no-fault bene-
fits by any compensation paid under any state or
Federal laws, such as workmen's compensation
and social security benefits. Thus, no-fault recov-
ery is reduced by governmental collateral sources
but not by any private insurance sources. The
basic purpose of no-fault is to insure the compensa-
tion of persons injured in automobile accidents.
But the effect of § 3109(1) is to allow both no-fault
benefits and private insurance benefits to those
who have such private insurance, yet it reduces
no-fault benefits by any benefits received under a
governmental program. Thus, those who have no
private insurance or who cannot afford such insur-
ance receive fewer benefits because of that fact.
We find this section to be patently unreasonable
and discriminatory.

Presumably, the purpose of § 3109(1) is to reduce
the overall cost of the no-fault program by elimi-
nating. duplicative recovery. If the insurer has to
pay less, he can charge less. As recognized in
*Shavers,* the reduction of the cost of insurance is a
proper basis for legislative classification, and pro-
hibitive cost was a problem that needed solution.
But the fact that a problem exists does not permit
arbitrary means of solving it and assuming that
§ 3109(1) does reduce costs, such savings alone do
not justify an essentially arbitrary classification.

*Manistee Bank & Trust Co v McGowan, supra,* at 677. *Cf. Grace v Howlett,* 51 Ill 2d 478; 283 NE2d 474 (1972).

Section 3109(1) is very broad—it covers any collateral governmental source. No-fault systems in other states include collateral source set-off provisions, but in Illinois and Florida, for example, the set-off provisions apply only to workmen's compensation benefits. It might be argued that the latter type of set-off provision is reasonable because the workmen's compensation benefits are provided without cost to the beneficiary, while private collateral source benefits are not.[1] *Cf. Grace v Howlett, supra,* Chief Justice Underwood, dissenting. The argument is persuasive. Section 3109(1), however, is not limited to governmental benefits provided without cost to the beneficiary. The provision requires the reduction of recovery by benefits which are in a very real sense "paid for" by the "insured", such as under social security, or benefits which are in the nature of employee benefits to government employees and veterans.[2] In this case the beneficiary's no-fault bene-

---

[1] This type of no-fault set-off provision (reducing no-fault benefits by workmen's compensation benefits received) has been upheld by the Florida Supreme Court. *Lasky v State Farm Insurance Co,* 296 So 2d 9, 21 (Fla, 1974).

[2] In *Richardson v Belcher,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231 (1971), the U.S. Supreme Court held that § 224 of the Social Security Act, which provides for the reduction of social security disability benefits to any person also receiving workmen's compensation, is not unconstitutional as making an arbitrary discrimination between workmen's compensation benefits and disability compensation from private insurance or from tort claim awards. Significant in *Richardson* is the Court's implicit holding that as long as there is a legitimate purpose served by a set-off provision, the provision will not be considered an invidious classification because inapplicable to recipients of private benefits.

But in the case at bar, grave doubts exist as to presence of a legitimate purpose being served by the set-off provision. It is said that the purpose of § 3109(1) is to prevent duplicative recovery of benefits. What is legitimate about that? It is asserted that the provision

fits are reduced by governmental insurance the insured has paid for but not by private insurance for which he has paid. While this raises a fundamental due process issue (see *e.g., Flemming v Nestor,* 363 US 603; 80 S Ct 1367; 4 L Ed 2d 1435 (1960), the principal evil of § 3101(1) is its arbitrary application. Those who can afford private insurance to supplement no-fault benefits are permitted duplicative recovery while those who cannot afford such are denied duplicative recovery.

An analogous problem has existed under the uninsured motorist systems. Courts have held that policy exclusions reducing an insured's recovery by amounts paid out of workmen's compensation funds or under disability benefit laws are invalid and against public policy. See *e.g., Allied Mutual Insurance Co v Larriva,* 19 Ariz App 385; 507 P2d 997 (1973).[3] In *Travelers Insurance Co v National Farmers Union Property & Casualty Co,* 252 Ark 624, 632; 480 SW2d 585, 591 (1972), the court stated:

"The right claimed by NFU [the insurer] would simply provide it with a windfall in the case of one covered by the workmen's compensation laws. The purpose of the Uninsured Motorist Act was to protect the insured, not the insurer."[4]

In *Bowser v Jacobs,* 36 Mich App 320; 194 NW2d 110 (1971), this Court was concerned with the constitutionality of a section of the Motor Vehicle Accident Claims Act which prevented

reduces the cost of no-fault coverage, but there has not been a hint of proof presented to this Court to so prove. Aided only by personal experience, one is inclined to conclude that the "lowered" costs are illusory.

[3] 24 ALR3d 1353 covers the point.

[4] The "windfall" claim may not be entirely correct as, presumably, the insurer has considered the set-off provision in setting its rates.

those covered by workmen's compensation from recovering under the Act. The plaintiffs were injured while in the course of their employment, by uninsured motorists. They received workmen's compensation and sought recovery against the uninsured motorist fund. The Secretary of State sought dismissal of the suits, relying upon a section of the Act which barred recovery by an injured person if he was covered by workmen's compensation. It was demonstrated that those who had private insurance coverage were not similarly barred from recovery against the fund. This Court struck down the legislative classification as unconstitutionally discriminatory. Like the legislative classification in *Bowser,* § 3109(1) which allows personal protection benefits plus private insurance benefits to one group, but deducts from personal protection benefits anything received from a government program is arbitrary and unreasonable. We find no legitimate purpose for establishing such a distinction which arbitrarily discriminates against those who receive certain governmental benefits.

We find MCLA 500.3109(1); MSA 24.13109(1) to be unconstitutional. As such, the act is void and of no effect as of the date of enactment. *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160; 150 NW2d 752 (1967).[5] As such, the statute confers no rights upon and affords no protection to defendant. *Norton v Shelby County,* 118 US 425, 442; 6 S Ct 1121; 30 L Ed 178 (1886). Defendant's argument, that the set-off provision in the insurance contract was the result of a bargain reached by contracting parties and thus is not affected by the validity or invalidity of § 3109(1), is egregious. The terms of the statute are mandatory. Without

---

[5] *See* 16 CJS, Constitutional Law, § 101.

the "sanction" of such a statute, the contract provision is patently offensive to public policy, and as such, the provision is invalid.[6]

The set-off provision in the contract is void. This cause is remanded to the trial court for entry of judgment in plaintiffs' favor. No costs.

V. J. BRENNAN, J. *(concurring).* I concur with Judge T. M. BURNS' opinion.

I see no corollary as to who gets what or is getting what from various sources, whether they be social security, stock dividends, insurance policies, etc., when it comes down to insurance benefits received as a result of injuries incurred from accidents.

The insurance companies successfully lobbied "no fault"[1] under the guise of necessary legislation which would inevitably greatly reduce insurance costs, which they could and would pass on to the public in the form of reduced policy premiums.

I have yet to see the lower premiums but have, unfortunately, on the contrary, seen increased premiums for the same coverage. These so-called savings have not been passed on to the public— and there are, no doubt, some savings present, as the insurance companies, under this provision, have picked up "Uncle Sam" and the state government as their partners in underwriting these policies.

Before "no fault" there was no reduction or subtraction in jury verdicts of amounts received

---

[6] *See, e.g., State ex rel Terbovich v Board of Com'rs of Wyandotte County,* 161 Kan 700; 171 P2d 777 (1946), *State ex rel Taylor v Carolina Racing Association, Inc,* 241 NC 80; 84 SE2d 390 (1954).

[1] Personal and property protection and residual liability insurance act, MCLA 500.3101 through 500.3179; MSA 24.13101 through 24.13179.

from social security or other state or Federal government benefits.

The provision reads:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." MCLA 500.3109(1); MSA 24.13109(1).

From the way it reads one could conclude that all former state and Federal employees on retirement could have subtracted from their accident insurance proceeds the amount of their monthly pension.

Why the provision in the first place; is a person on social security more susceptible to accidents than one who is not? Is social security's purpose to compensate our senior citizens for prospective accident cost needs? How about a deduction from the deduction in favor of the recipient for the contributions by the recipient into the social security fund over the many years before he or she became eligible for social security? These observations are bordering on the obscure, yet they could follow from the logic behind the present law.

As a matter of judgment I can find no reasonableness in this legislative classification.

I, too, would declare the set-off provision in the contract as void.

BASHARA, P. J. *(dissenting)*. I respectfully dissent.

A brief review of the facts is necessary to this discussion. Plaintiff's decedent was fatally injured in an automobile collision on February 19, 1975. The decedent was insured under a no-fault auto-

mobile insurance policy issued by the defendant. The policy provided in relevant part:

"(5) the amount payable by the company under the terms of this insurance shall be reduced by
"(a) the amount paid, payable, or required to be provided under the laws of any state or federal government."

The reduction in payments allowed by paragraph (5)(a) of the insurance policy is provided for in MCLA 500.3109(1); MSA 24.13109(1), which states:

"(1) Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

The plaintiffs qualified for the maximum survivor's loss of $1,000 per 30-day period. They also qualified for social security benefits of approximately $560 per month. Pursuant to paragraph (5)(a) of the insurance policy, the defendant reduced the insurance benefits $560 and paid the plaintiff approximately $440 per month.

Plaintiffs brought this action to recover the difference. Count I of plaintiff's complaint alleged breach of contract. Count II requested a declaratory judgment that MCLA 500.3109(1); MSA 28.13109(1), was unconstitutional as a violation of equal protection and due process of law and void as incorporated in the insurance policy.

Defendant moved for summary judgment on both counts grounded on GCR 1963, 117.2(1) and (3). Defendant failed to file a supporting affidavit. Consequently, the trial court only considered

whether the complaint failed to state a claim upon which relief could be granted. GCR 1963, 117.2(1).

The court held that count I failed to allege facts constituting breach of contract because the insurance contract provided for a reduction in benefits in the amount "required to be provided under the laws of any state or federal government". The court further ruled that count II failed to state a claim because the contract was between private parties. Therefore, a constitutional attack could not be sustained, where there existed no state action.

A motion for summary judgment brought under GCR 1963, 117.2(1) merely tests the legal sufficiency of the claim as determined from the pleadings alone. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974), 1 Honigman & Hawkins (2d ed), Committee Notes to GCR 1963, 117, pp 353, 355. For the purposes of that motion, both at the trial and appellate levels, every well pled allegation in the complaint is assumed to be true. *Bielski v Wolverine Insurance Co,* 379 Mich 280, 283; 150 NW2d 788 (1967). The test is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972).

I am of the opinion the trial judge correctly ruled that count I failed to allege breach of contract. The facts pled do not allege breach of contract because the insurance contract provided for a reduction in no-fault benefits to the extent of government benefits received.

The heart of this lawsuit is count II. The proscriptions of the Fourteenth Amendment, US

Const, Am XIV, apply to actions of the state and not merely private conduct. *Shelley v Kraemer,* 334 US 1; 68 S Ct 836; 92 L Ed 1161 (1948). The Fourteenth Amendment applies to all state legislation which impairs due process or denies equal protection. *Civil Rights Cases,* 109 US 3, 11; 3 S Ct 18; 27 L Ed 835 (1883).

It is undisputed that the basis for paragraph (5)(a) of the insurance policy is the legislative enactment of MCLA 500.3109(1); MSA 24.13109(1). This is a state action. See *Peterson v City of Greenville,* 373 US 244; 83 S Ct 1119; 10 L Ed 2d 323 (1963). I believe the trial judge erred in determining there was no state action, and consequently failing to consider the constitutional questions raised.

Appellate courts should not decide constitutional questions not passed upon by the trial court. *Cortez v International Union, United Automobile, Aircraft & Agricultural Workers of America (UAW-CIO),* 339 Mich 446, 453; 64 NW2d 636 (1954), *Wilson v Boyer,* 269 Mich 197, 199; 256 NW 854 (1934). In my opinion, the proper procedure is to remand to the trial judge for consideration of the constitutional questions raised in the action for declaratory judgment.[1] However, because my brothers found it necessary to consider the constitutional question of equal protection, I feel compelled to respond.

A classification must be reasonable, not arbitrary, so that all persons similarly situated are treated alike. *Reed v Reed,* 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971), *F S Royster Guano Co*

---

[1] A remand seems particularly appropriate in light of the majority's statement in n 2, that no proof was presented that MCLA 500.3109; MSA 24.13109, results in cost reduction. No proofs were presented because the dispute was resolved summarily without consideration of the constitutional question.

*v Virginia,* 253 US 412, 415; 40 S Ct 560; 64 L Ed
989 (1920). The Equal Protection Clause does not
deny the state the power to treat different classes
of persons in different ways. *Railway Express
Agency, Inc, v New York,* 336 US 106; 69 S Ct 463;
93 L Ed 533 (1949). *Barbier v Connolly,* 113 US 27;
5 S Ct 357; 28 L Ed 923 (1885). The grossest
discrimination can sometimes lie in treating things
that are different as though they are exactly alike.
*Jenness v Fortson,* 403 US 431, 442; 91 S Ct 1970;
29 L Ed 2d 554 (1971).

The majority has correctly determined that a
discrimination exists under MCLA 500.3109(1);
MSA 24.13109(1), which requires public benefits to
be set-off against no-fault insurance proceeds,
while mandating no such reduction for private
insurance benefits. The majority reasons that if
the purpose of the provision is to reduce costs by
eliminating duplicative recovery, such a classifica-
tion is unreasonable and arbitrary, as it only
operates on those who receive public benefits.

In my opinion the majority has combined two
different classes and treated them as if they were
alike. The same error occurred in *Richardson v
Belcher,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231
(1971). In *Richardson* the appellee attacked the
Social Security Act, § 224, 79 Stat 406 (1968); 42
USC 424a, which permitted the reduction of his
social security benefits in the amount of work-
men's compensation benefits received by him. Ap-
pellee claimed the statute violated the Due Process
Clause of the Fifth Amendment, US Const, Am V,[2]
because it discriminated between those disabled
employees who received workmen's compensation

---

[2] The Federal Government's duty under the Due Process Clause of
the Fifth Amendment includes guaranteeing all citizens equal protec-
tion of the laws. *Bolling v Sharpe,* 347 US 497; 74 S Ct 693; 98 L Ed
884 (1954).

and those who received compensation from private insurance.

The United States Supreme Court rejected any suggestion that the classes were alike. The government benefits were all part of a statutory scheme to insure a minimum threshold of recovery and to provide for needs not previously met by private insurance. The Court determined the classification could be justified by the conclusion of Congress that Federal duplication of benefits could gradually weaken or atrophy the state workmen's compensation systems. Furthermore, the Court refused to consider whether the purposes of Congress might have been better served had the offset provisions been extended to private insurance, on the grounds that it would exceed their constitutional authority.

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality' ". *Dandridge v Williams,* 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970).

Social security as well as other governmental programs, such as workmen's compensation benefits, are part of an *overall statutory scheme* established as a matter of public policy to provide minimum compensation for *all* persons otherwise qualifying for benefits under the programs. See *Lasky v State Farm Insurance Co,* 296 So 2d 9, 21 (Fla 1974), *reh den,* 43 Fordham L R 379, 396 (1974). These programs were intended to fill a void not adequately covered by private insurance. See

*Richardson v Belcher, supra,* 404 US 83, 84. As such, a rational basis exists for distinguishing the classes.

The Legislature could rationally conclude that a reduction of no-fault proceeds to the extent one receives public benefits would eliminate duplicate recovery and reduce costs. Whether the Legislature should have gone further, by providing an offset for private insurance, is not for us to consider under our limited function as a reviewing court under the constitution. *Richardson v Belcher, supra,* 202 US 84. The Equal Protection Clause does not preclude the state from taking one step at a time, addressing itself to the phase of the problem that seems most acute, while neglecting other phases of the problem. *Geduldig v Aiello,* 417 US 484, 495; 94 S Ct 2485; 41 L Ed 2d 256 (1974), *Williamson v Lee Optical Co,* 348 US 483, 489; 75 S Ct 461; 99 L Ed 563 (1955).

Assuming *arguendo* the majority is correct that the classes are indistinguishable, their analysis still does not justify the conclusion that there is a deprivation of equal protection of the law. *San Antonio Independent School District v Rodriguez,* 411 US 1, 20; 93 S Ct 1278; 36 L Ed 2d 16 (1973), *reh den* 411 US 959; 93 S Ct 1919; 36 L Ed 2d 418 (1973), analyzed prior precedent to determine the common characteristics of classes discriminated against by their inability to pay. The Court stated:

"The individuals, or groups of individuals, who constituted the class discriminated against in our prior cases shared two distinguishing characteristics: because of their impecunity they were completely unable to pay for some desired benefit, and as a consequence, *they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit."* (Emphasis supplied.)

That is not the case here. Under the statutory

scheme everyone participating in no-fault is enti-
tled to certain minimum benefits. The fact that
some individuals are unable to purchase private
insurance is of no moment. As long as everyone
has an opportunity to enjoy a minimum statutory
benefit, there is no absolute deprivation. Any dis-
crimination that might exist is insufficient to jus-
tify invoking the Equal Protection Clause.

I would reverse the trial judge's summary judg-
ment as to count II and remand for independent
consideration of the constitutionality of MCLA
500.3109(1); MSA 24.13109(1).