POLLOCK v FRANKENMUTH MUTUAL INSURANCE COMPANY

1. Constitutional Law—Equal Protection—Insurance—Automo-
   biles—Statutes—No-Fault—Duplicate Benefits—Required
   Coverage—Voluntary Coverage.

   A section of the no-fault insurance act requires that benefits
   which state or Federal law provide or require to be provided
   must be subtracted from any recovery under a no-fault automo-
   bile policy but does not require such subtraction where the
   additional benefits are voluntarily contracted for by the in-
   sured; this distinction has a rational basis in light of the
   legislative goal of reducing automobile insurance premiums;
   the section is unconstitutional however, because it discrimi-
   nates against the class of insureds entitled to benefits required
   by the state or Federal law as well as no-fault recovery, by
   forcing them to purchase insurance on which they cannot
   recover, so that other insureds may enjoy lower premiums for
   insurance on which they can recover.

2. Constitutional Law—Rational Basis Test—Statutes—Insur-
   ance—No-Fault—Reasonable Classifications.

   Application of the rational basis test is proper to evaluate equal
   protection challenges to sections of the no-fault insurance act; a
   section will be upheld where its classifications are reasonable
   and bear some reasonable relationship to the object of the
   legislation.

Appeal from Otsego, William A. Porter, J. Sub-
mitted April 6, 1977, at Lansing. (Docket No.
27582.) Decided October 24, 1977. Leave to appeal
applied for.

Complaint by Channing Pollock and his sons
Keith Pollock and Channing Pollock against
Frankenmuth Mutual Insurance Company seeking
recovery for the death of the wife and mother of

Reference for Points in Headnotes
[1, 2] Am Jur 2d New Topic Service, No-Fault Insurance § 22.

the plaintiffs under a policy of no-fault automobile insurance. Third-party complaint by Frankenmuth Mutual against Tyrolean Hills, Inc., employer of the decedent, seeking partial indemnification. Third-party defendant Tyrolean Hills, Inc., moved for summary judgment. Summary judgment for Tyrolean Hills, Inc., granted. Frankenmuth Mutual appeals. Affirmed.

*Schneider, Craven & Handlon,* for third-party defendant Tyrolean Hills, Inc.

*George M. Tunison,* for third-party plaintiff Frankenmuth Mutual.

Before: BRONSON, P. J., and M. F. CAVANAGH and C. J. BYRNS,* JJ.

M. F. CAVANAGH, J. Defendant and third-party plaintiff Frankenmuth Mutual appeals from a trial court order granting summary judgment for third-party defendant Tyrolean Hills. GCR 1963, 117.2(1).

On December 20th, 1973, Marguerite Pollock was killed when another vehicle collided with an automobile operated by her, titled in her husband's name, and insured by defendant Frankenmuth Mutual. Her husband and their two sons filed a claim against Frankenmuth for no-fault benefits. A dispute arose concerning the Pollocks' right to recover benefits, and they brought suit.

The controversy centered on whether Marguerite Pollock's death had occurred while she was employed by Tyrolean Hills and under circumstances giving rise to a claim for workers' compensation benefits. Frankenmuth claimed that such benefits were payable, and that § 3109(1) of the no-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fault act [MCLA 500.3109(1); MSA 24.13109(1)], entitled Frankenmuth to subtract the amount of such benefits from any payments due under the policy. Frankenmuth insisted that it was entitled to subtraction of payable benefits even though plaintiffs refused to file for them.

Frankenmuth successfully moved to join Tyrolean Hills as a third-party defendant and filed a third-party complaint. GCR 1963, 204.1(1), 111.1. The complaint alleged tortious conduct by Tyrolean Hills in failing to have in effect workers' compensation insurance and in combining together with plaintiff Channing Pollock to prevent liability for workers' compensation benefits for the death of Marguerite Pollock. Channing Pollock was part owner and manager of Tyrolean Hills at the time the compensation liability was said to have arisen.

Tyrolean Hills moved for summary and accelerated judgment on a number of grounds. GCR 1963, 116.1; 117.2. However, the trial court ruled only that § 3109(1) of the no-fault act was void as violative of the equal protection clauses of the Federal and state constitutions. US Const, Am XIV, Const 1963, art 1, § 2. Frankenmuth Mutual's third-party claims fell with the statutory right of subtraction upon which they were based. Accordingly, the court entered summary judgment for third-party defendant Tyrolean Hills on the ground that Frankenmuth Mutual had failed to state a claim upon which relief can be granted. GCR 1963, 117.2(1). The sole question before us on this appeal is the correctness of the lower court's ruling on the constitutional issue, *i.e.,* whether § 3109(1) of the no-fault act denies equal protection of the laws when applied to require subtraction of payable workers' compensation benefits from any recovery of personal protection benefits due under

a no-fault policy. We hold that the section is constitutionally repugnant, and affirm.

Recent decisions of our Court have established the rational basis test as applicable for evaluating equal protection challenges to sections of the no-fault act. *McKendrick v Petrucci,* 71 Mich App 200, 204–206; 247 NW2d 349, 351 (1976), *Shavers v Attorney General,* 65 Mich App 355, 366–368; 237 NW2d 325, 331–333 (1975), *lv granted,* 396 Mich 869 (1976). See generally, *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668–672; 232 NW2d 636, 641–643 (1975). Our task under this test is to examine the legislation "to see if its classifications are reasonable, and bear some reasonable relationship to the object of the legislation". *Shavers v Attorney General, supra,* 65 Mich App at 369; 237 NW2d at 333.

It is contended here that § 3109(1) makes an arbitrary classification between those entitled to benefits collateral to recovery on a no-fault policy. The act provides as follows:

"Sec. 3109. (1) Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." MCLA 500.3109(1); MSA 24.13109(1).

The act does not require subtraction of collateral benefits payable from insurance policies purchased privately and without compulsion of state or Federal law.

Appellee argues, and the lower court concluded, that this disparity in treatment bears no reasonable relationship to the objective of the legislation. In *O'Donnell v State Farm Mutual Automobile Insurance Co,* 70 Mich App 487; 245 NW2d 801 (1976), *lv granted,* 397 Mich 848 (1976), another

panel of this Court considered the legislative purpose and the constitutionality of § 3109(1) as applied to require the subtraction of social security benefits from recovery on a no-fault insurance policy. See also, *Wysocki v DAIIE,* 77 Mich App 565; 258 NW2d 561 (1977). En route to its holding that the statute was unconstitutional, the *O'Donnell* Court defined the presumed purpose of this section in relation to the no-fault statutory scheme:

"The basic purpose of no-fault is to insure the compensation of persons injured in automobile accidents.

\*   \*   \*

"Presumably, the purpose of § 3109(1) is to reduce the overall cost of the no-fault program by eliminating duplicative recovery. If the insurer has to pay less, he can charge less. As recognized in *Shavers,* the reduction of the cost of insurance is a proper basis for legislative classification, and prohibitive cost was a problem that needed solution." 70 Mich App, at 495; 245 NW2d, at 803.

The panels in *O'Donnell* and *Wysocki* based their holdings on a finding that distinguishing between recipients on the basis of the origin of their benefits was arbitrary, and without legitimate purpose. *O'Donnell v State Farm Insurance, supra,* 70 Mich App, at 498; 245 NW2d, at 804–805, *Wysocki v DAIIE, supra,* 77 Mich App at 571.

We must disagree; there is logic in the distinction drawn between these two classes. We accept for this analysis the *O'Donnell* Court's statement of the statute's purpose: the lowering of premiums by the reduction of claims that duplicate other recovery. It is reasonable to conclude that requiring subtraction of government benefits would further this purpose. The crucial question then be-

comes whether it is reasonable to think that *extending* the subtraction rule to benefits payable under private insurance contracts would *not* further the statute's purpose. Although the immediate result of requiring subtraction of collateral private insurance benefits would be a reduction in claims on mandatory no-fault policies, the long term effect would almost certainly be deterrence of purchase of duplicative policies. It simply makes no sense to pay premiums for extra coverage if the subtraction rule strips that coverage away. If no one buys extra insurance, then of course it is not available as a source of primary recovery to reduce no-fault claims and, with them, no-fault premiums. In sum, it is reasonable to believe that requiring subtraction of government benefits may reduce no-fault premiums, but that requiring subtraction of private collateral insurance benefits would only discourage the purchase of such insurance, without reducing no-fault premiums. Therefore, we find the distinction made between recipients of government mandated benefits, on the one hand, and duplicate private insurance benefits, on the other, to be reasonable in light of the presumed legislative goal.[1]

However, this conclusion does not allay our

[1] We regard *Bowser v Jacobs,* 36 Mich App 320; 194 NW2d 110 (1971), as distinguishable on its facts. That case held that persons who had received workers' compensation benefits could not constitutionally be denied further recovery from the Motor Vehicle Accident Claims Fund, where other persons with available means of recovery were not similarly turned away. *Bowser* found this discriminatory treatment irreconcilable with the legislative purpose behind creation of the fund: assuring compensation for those injured by uninsured tortfeasors and without other adequate sources of recovery.

It is not alleged in this case that the operation of § 3109(1) would deny plaintiffs adequate recovery. Because of our disposition of the constitutional issue, *infra,* we need not speculate as to what our holding would be if such an allegation were made and sustained by the facts of this case. *But cf., Murray v Ferris,* 74 Mich App 91; 253 NW2d 365 (1977).

concern regarding the constitutionality of § 3109(1). Even assuming that the subtraction rule does lower insurance premiums, we are disturbed by the discriminatory distribution of those savings inherent in the no-fault scheme.

If the subtraction rule functions as intended, it denies recovery on no-fault policies for the purpose of lowering premiums. However, those lowered premiums, if such there are, are not required to be made available to policyholders in proportion to the extent to which their workers' compensation coverage duplicates, and thereby supplants, their no-fault coverage. Instead, the savings are supposedly passed on to all insureds, including those not covered by workers' compensation. The motorist employee is compelled to have in effect a no-fault policy [MCLA 500.3101(1); MSA 24.13101(1)], denied recovery on claims compensable by workers' compensation, ostensibly for the purpose of lowering premiums, and then denied the full benefit of the savings in premiums.[2] In short, the class of insureds entitled to workers' compensation as well as no-fault recovery is forced to subsidize premium savings by the greater class of all insureds. To put the matter another way, worker motorists are forced to purchase insurance on which the law denies them a right of recovery, so that other insureds may enjoy lower premiums for insurance on which they can recover.

We perceive no way in which this allocation increases premium savings. Forcing a given class to purchase insurance upon which they cannot recover will tend to reallocate wealth, but will do so in a manner unrelated to any identifiable legislative policy. We do not regard the random redis-

[2] Contrast the provision made for those with "other health and accident coverage." MCLA 500.3109a; MSA 24.13109(1).

tribution of wealth as a legitimate legislative ob-
jective, sufficient to justify the discriminatory ef-
fect of § 3109(1).

Affirmed.