DOLSON v SECRETARY OF STATE

Docket No. 77-4450. Submitted May 2, 1978, at Lansing.—Decided May 23, 1978.

Robert J. Dolson, plaintiff, was injured in an accident on March 5, 1976, while driving a vehicle for his employer whose no-fault accident insurance had been cancelled five days earlier. Plaintiff did not have any no-fault insurance coverage because neither he nor anyone in his household owned a car. On April 22, 1977, plaintiff claimed entitlement to insurance benefits from the assigned claims facility. The claim was denied because more than one year had elapsed between the accident and the time the claim was filed. Plaintiff filed an action in the Jackson Circuit Court against the assigned claims facility of the Secretary of State. The court, Russell E. Noble, J., granted defendant's motion for accelerated judgment. Plaintiff appeals. *Held:*

The one-year notice requirement for claims under the assigned claims provisions of the no-fault insurance act exists to insure that claims be settled while the evidence is fresh and to contribute to the general objective of the act, *i.e.,* to provide prompt monetary relief for vehicular accident losses at the lowest cost to the system and the individual; such a requirement is not violative of due process or equal protection guarantees.

Affirmed.

D. E. HOLBROOK, J., concurs. He suggests that the Legislature require insurance companies to notify the Secretary of State 30 days prior to cancellation of no-fault insurance policies and provide for the Secretary of State to notify the owner of the vehicle to show proof of insurance within 10 days and to seize the vehicle's license plate upon failure to show such proof. Such a procedure would prevent uninsured vehicles from being on the road and would also prevent unsuspecting drivers or passengers from using a vehicle which is uninsured.

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 542, 545, 550.
[2, 3] New Topic Service, Am Jur 2d, No-Fault Insurance § 1.
[4] New Topic Service, Am Jur 2d, No-Fault Insurance §§ 12, 13.
[5] New Topic Service, Am Jur 2d, No-Fault Insurance § 3.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—STATUTES—DUE PROCESS.

A law is not violative of the requirement of due process when it is not unreasonable, arbitrary or capricious, and when the means selected have a real and substantial relation to the object sought to be attained (US Const, Am XIV, Const 1963, art 1, § 17).

2. AUTOMOBILES—STATUTES—INSURANCE—NO-FAULT INSURANCE—OBJECTIVE OF NO-FAULT INSURANCE.

The general objective of the no-fault insurance act is to provide prompt monetary relief for losses suffered in vehicular accidents, and this should be done at the lowest cost to the system and the individual (MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

3. AUTOMOBILES—INSURANCE—STATUTES—NO-FAULT INSURANCE—LIMITATION OF ACTIONS.

The objective of the one-year time limitation for assigned claims contained in the no-fault insurance act is to insure that claims will be settled while the evidence is fresh and the provision contributes to the lowest cost general objective of the act and is, therefore, not violative of the requirement of due process (MCL 500.3174; MSA 24.13174).

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—LEGISLATIVE CLASSIFICATIONS—AUTOMOBILES—INSURANCE—STATUTES—NO-FAULT INSURANCE ACT.

A legislative classification, in order not to violate the equal protection guarantee of the constitution, must be germane to the object of the legislation and must be made uniform in its operation upon all persons of the class to which it naturally applies; the one-year notice requirement for assigned claims in the no-fault statute bears a reasonable relationship to the legislative objective, and operates uniformly on all within the class and is, therefore, not violative of the equal protection requirement (US Const, Am XIV, Const 1963, art 1, § 2, MCL 500.3174; MSA 24.13174).

CONCURRENCE BY D. E. HOLBROOK, J.

5. INSURANCE—AUTOMOBILES—NO-FAULT INSURANCE—CANCELLATION —NOTICE TO SECRETARY OF STATE.

*The Legislature should require insurance companies to notify the Secretary of State 30 days prior to cancellation of a no-fault insurance policy and should permit the Secretary of State to require the owner of the vehicle to produce proof of insurance or suffer loss of his vehicle license plates; such a procedure*

*would prevent uninsured vehicles from being on the road and would prevent drivers and passengers from knowingly or unknowingly using an uninsured vehicle.*

*Rosenburg, Stanton, Bullen & Nelson, P. C.* (by *Gary W. Britten),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke* and *Warren R. Snyder,* Assistants Attorney General, for defendant.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

PER CURIAM. Plaintiff was injured March 5, 1976, while driving a vehicle for GTL Communications, Inc., his employer. GTL's no-fault accident insurance had been cancelled five days earlier. Neither plaintiff nor anyone in his household owned a vehicle. Consequently, plaintiff did not have any no-fault insurance coverage.

On April 22, 1977, plaintiff claimed entitlement to insurance benefits from the Assigned Claims Facility, pursuant to MCL 500.3171 *et seq.;* MSA 24.13171 *et seq.* The claim was denied because more than one year had elapsed between the accident and the time the claim was filed. MCL 500.3174; MSA 24.13174. Defendant's motion for accelerated judgment pursuant to GCR 1963, 116.1(5) was granted on this ground and plaintiff appeals.

Plaintiff first argues that the one-year; limitation denies him due process of law. US Const, Am XIV; Const 1963, art 1, § 17. The classic test used to determine if a statute violates due process is found in *Nebbia v New York,* 291 US 502, 525; 54 S Ct 505; 78 L Ed 940 (1934), *McAvoy v H B Sherman Co,* 401 Mich 419, 435–436; 258 NW2d 414 (1977):

"The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit governmental regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts."

To determine if the statute is "unreasonable, arbitrary or capricious" and if it bears a "real and substantial relation to the objects sought to be attained", an appellate court must examine the general objective of the no-fault act and the specific objective of the one-year limitation. *McAvoy, supra,* at 436.

The general objective of the no-fault insurance act is to provide prompt monetary relief for losses suffered in vehicular accidents. *O'Donnell v State Farm Mutual Automobile Ins Co,* 70 Mich App 487, 495; 245 NW2d 801 (1976), *lv gtd,* 397 Mich 848 (1976). This should be done "at the lowest cost to the system and the individual". Shavers v Attorney General, 65 Mich App 355, 370; 237 NW2d 325 (1975).

We conclude that the time limitation for recovery of personal protection insurance benefits, embodied in MCL 500.3174; MSA 24.13174, exists for administrative convenience. Its specific objective is to insure that claims be settled while the evidence remains fresh. This would contribute to the "lowest cost" objective enunciated in *Shavers, supra,* at 370.

Given the underlying rationale of the no-fault act, it cannot be said that the notice limitation contained in MCL 500.3174; MSA 24.13174 denies plaintiff his due process right.

Plaintiff also contends that the one-year limitation denies him equal protection of the law under US Const, Am XIV; Const 1963, art 1, § 2. Plaintiff raises a unique equal protection argument. MCL 500.3174; MSA 24.13174 puts the same time limitation on all injured parties, regardless of their circumstances. In essence, plaintiff believes he is denied equal protection of the law because he has *not* been treated differently.

The legislative classification in the case at bar does not violate equal protection. "Generally, legislative classification should be presumed valid". *O'Donnell, supra,* at 494. A legislative classification " * * * must be germane to the object of the legislation, and it must be made uniform in its operation upon all persons of the class to which it naturally applies." *O'Donnell, supra,* at 494.

Therefore, MCL 500.3174; MSA 24.13174 has a presumption of validity. Its reasonable relationship to a legitimate public interest has already been discussed. Finally, there is no question that the notice limitation is uniform for all affected persons.

It becomes plaintiff's burden to show that the challenged law is arbitrary. *McAvoy, supra,* at 453. This he has not done.

Affirmed. Costs to appellee.


D. E. HOLBROOK, J. *(concurring).* This writer concurs in an effort to correct a serious situation now present in our no-fault insurance laws. This is one of many cases to come before this Court where an individual has been injured in an accident involv-

ing a vehicle without mandatory no-fault insurance. The situation of vehicles being driven in Michigan without insurance is "all too prevalent". Victims of drivers of automobiles without mandatory insurance as required by our law are crying out for help and relief.

In the instant case, plaintiff was a 22-year-old man, employed by GTL Communications. On March 5, 1976, he was injured in an accident when the brakes on his employer's 2-1/2-ton digger truck he was driving failed, causing the truck to leave the road and throw plaintiff from the cab. As of the date of the accident, neither the plaintiff nor anyone in his household owned a motor vehicle. Between March 5, 1976, and March 5, 1977, GTL Communications went out of business. Plaintiff had a *very difficult* time trying to find out who was GTL's insurance company. Eventually plaintiff found out, only to find that the insurance had been cancelled five days prior to his accident.

In this state, a person receives a yearly license plate or tab upon evidence of proper no-fault insurance. In such instances, this evidences that the vehicle and owner has coverage. However, for any number of reasons this coverage may be cancelled during the period that the license plate is valid. Unfortunately, the vehicle is still driven by people intentionally violating the insurance laws and by people who do not know that the vehicle is uninsured. Also, persons are injured and killed by such uninsured vehicles, owners and drivers.

This writer suggests that a way to cut down on the number of vehicles being used without insurance is to provide a way to take their license plates. This can be done by requiring the insurance companies to notify the Secretary of State's office 30 days in advance when a vehicle's insur-

ance is to be cancelled or terminated. The Secretary of State would then notify the owner of the vehicle to show proof of insurance coverage within ten days and, upon failure to so show, then to seize the vehicle's license plate. The cost of this service could be required to be paid for by the delinquent vehicle owner. This would prevent uninsured vehicles from being on the road and also prevent unsuspecting drivers or passengers from using a vehicle which is uninsured.

If such a plan had been in effect, the instant case would have been prevented.

This writer reluctantly concurs with the opinion of my brothers for the reason that the law as presently written affords no relief under the facts of this case.